# IN THE SUPREME COURT OF TEXAS

════════════

No. 11-0114

════════════

STATE OF TEXAS, PETITIONER,

v.

ANGELIQUE NAYLOR AND SABINA DALY, RESPONDENTS

══════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
══════════════════════════════════════════

*- consolidated with -*

════════════

No. 11-0222

════════════

IN RE STATE OF TEXAS, RELATOR

══════════════════════════════════════════
ON PETITION FOR WRIT OF MANDAMUS
══════════════════════════════════════════

**Argued November 5, 2013**


JUSTICE BROWN delivered the opinion of the Court, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE JOHNSON, and JUSTICE BOYD joined.

JUSTICE BOYD filed a concurring opinion.

JUSTICE WILLETT filed a dissenting opinion, in which JUSTICE GUZMAN and JUSTICE DEVINE joined.

JUSTICE DEVINE filed a dissenting opinion.

JUSTICE LEHRMANN did not participate in the decision.

This case arises from the State's attempt to intervene in a civil action after the trial court had already rendered final judgment. We must determine whether the court of appeals erred in holding the State lacks standing to appeal the judgment and, if not, whether the State is entitled to mandamus relief. We answer both questions in the negative, affirming the decision of the court of appeals and denying the State's petition for writ of mandamus.

## I

Texas residents Angelique Naylor and Sabina Daly were married in Massachusetts in 2004. A few years later, Naylor filed for divorce in Travis County. Because the two women were raising a child and operating a business together, Naylor hoped to obtain a judgment addressing their respective rights, some of which they had already settled in a suit affecting the parent-child relationship ("SAPCR").

The State of Massachusetts indisputably recognizes this same-sex marriage. Texas, however, adheres to the traditional definition of marriage and does not recognize same-sex unions. Our constitution unambiguously provides that "[m]arriage in this state shall consist only of the union of one man and one woman." TEX. CONST. art. I, § 32(a). And while other states allow same-sex unions, Texas is not "required to give effect to any public act, record, or judicial proceeding of any other State . . . that is treated as a [same-sex] marriage under the laws" of that state. 28 U.S.C.

2

§ 1738C; *see also* TEX. FAM. CODE § 6.204(c)(1) (indicating Texas courts may not "give effect" to such arrangements).

Strategically emphasizing this aspect of Texas law, Daly originally contested the divorce, contending that section 6.204 of the Family Code deprives Texas courts of jurisdiction to implicitly recognize same-sex marriage by issuing divorce decrees to same-sex couples. While Daly recognized the district court's jurisdiction over the controversy, *see id.* § 155.001(a), she argued the court could only declare the marriage void. She also contested the need to modify the recently settled SAPCR.

Although the trial court acknowledged Daly's concerns and the complex issues Naylor's petition raised, it did not resolve those issues, as the two women settled their differences over the course of a two-day hearing. At the end of the second day, the trial court orally granted an ostensible divorce "pursuant to the agreement [the parties had] recited into the record." Recognizing that divorce may not be available to same-sex couples in Texas, this record stipulated that the judgment "is intended to be a substitute for . . . a valid and subsisting divorce," and "is intended to dispose of all economic issues and liabilities as between the parties whether they [are] divorced or not."

Several lawyers from the Texas Attorney General's Office were present during the hearing and the announcement of the trial court's decision. The following day, the State filed a petition in intervention seeking "to oppose the Original Petition for Divorce and to defend the constitutionality of Texas and federal laws that limit divorce actions to persons of the opposite sex who are married to one another." The State also raised a plea to the jurisdiction urging the court to dismiss Naylor's petition. The State explained that the court lacked jurisdiction to render a divorce, but could declare the marriage void under Chapter 6 of the Family Code and pursuant to Daly's response to the divorce

3

petition. The State had not previously attempted to intervene or otherwise make its interests known to the court.

Daly objected to this attempted intervention, alleging the State has no justiciable interest in the case and that it filed its petition late. Naylor echoed Daly's arguments in a motion to strike the intervention. Naylor also objected to the State's jurisdictional plea, arguing that Texas law is unconstitutional to the extent it withholds the remedy of divorce. The trial court held a hearing on the contested intervention but ultimately decided not to entertain the State's petition, emphasizing that the attempted intervention had come too late. The judge therefore did not rule on the motion to strike or the plea to the jurisdiction, but instead signed the judgment and encouraged the State to seek appellate review.

The court of appeals, however, dismissed the State's appeal for want of jurisdiction, holding the intervention untimely and finding no basis for appellate standing. *See generally State v. Naylor*, 330 S.W.3d 434 (Tex. App.—Austin 2011). The State then sought this Court's review, asking us to allow the intervention and to vacate the divorce. In the alternative, the State seeks a writ of mandamus ordering the district court to vacate its decree and dismiss the petition for want of jurisdiction.

## II

We agree with the court of appeals that the State lacks standing to appeal the trial court's decree. Standing is a component of subject-matter jurisdiction, *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993), and appellate standing is typically afforded "only to parties of record," *Gunn v. Cavanaugh*, 391 S.W.2d 723, 724–725 (Tex. 1965). Consequently, an appeal

filed by an improper party must be dismissed. *Id*. We always have jurisdiction to resolve questions of standing and jurisdiction, and we do so via de novo review. *Villafani v. Trejo*, 251 S.W.3d 466, 467 (Tex. 2008); *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004).

Over the course of this litigation, the State has raised three arguments regarding its right to appeal the disputed divorce decree. Before the trial court, the State insisted it had timely intervened and so is a party to the case. At the court of appeals, the State alleged standing both as a timely intervenor and under the virtual-representation doctrine. *See Motor Vehicle Bd. of Tex. Dep't of Transp. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 110 (Tex. 1999) (describing the doctrine). Now the State contends that various equitable considerations also provide a basis for appellate standing. We address each argument in turn.

## A

This Court has consistently recognized the State's right to defend Texas law from constitutional challenge.[1] However, as the court of appeals explained, the State did not timely intervene in this dispute and therefore is not a party of record. Our intervention doctrine is expansive but not without limits. Under Texas law, a third party "is not required to secure the court's permission to intervene." *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990) (citations omitted). "Any party may intervene by filing a pleading, subject to being stricken [ ] by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60. Yet

---

[1] *See generally State v. Hodges*, 92 S.W.3d 489 (Tex. 2002) (allowing intervention where local candidate challenged constitutionality of election law); *Wilson v. Andrews*, 10 S.W.3d 663 (Tex. 1999) (allowing intervention where statute allegedly infringed on city's home-rule powers); *Corpus Christi People's Baptist Church, Inc. v. Nueces Cnty. Appraisal Dist.*, 904 S.W.2d 621 (Tex. 1995) (allowing intervention where church challenged aspects of tax code); *Terrazas v. Ramirez*, 829 S.W.2d 712, 721–22 (Tex. 1991) (holding that Attorney General's "broad discretionary power" includes authority to settle actions contesting constitutionality of statutes).

while the rules require no judicial permission and impose no intervention deadline, our common law dictates that a party may not intervene post-judgment unless the trial court first sets aside the judgment. *See First Alief Bank v. White*, 682 S.W.2d 251, 252 (Tex. 1984) ("[A] plea in intervention comes too late if filed after judgment and may not be considered unless and until the judgment has been set aside." (citations omitted)).

In this case the trial court rendered final judgment when it orally announced the divorce. A court's judgment is its announcement of the resolution of the issues in a lawsuit and is rendered "when the trial court officially announces its decision in open court or by written memorandum filed with the clerk." *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995) (citing *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56, 58 (Tex. 1970)) (other citations omitted). A trial court renders judgment orally when it announces rendition as a present act and not as an "intention to render judgment in the future." *Id.* at 858 (quoting *Reese v. Piperi*, 534 S.W.2d 329, 330 (Tex. 1976)). Its judgment is final as of that date, even if the judgment is void or otherwise flawed.[2]

The record confirms the trial court had already rendered judgment when the State attempted to intervene. On the second day of the preliminary divorce hearing, Daly and Naylor returned from lunch with a tentative settlement agreement, and Daly's attorney read the terms into the record. This settlement "dispose[d] of all economic issues and liabilities as between the parties." After dictating the terms of the agreement, counsel asked Daly whether she was "asking that the Court grant [ ] a

---

[2] *See Middleton v. Murff*, 689 S.W.2d 212, 213 (Tex. 1985) (per curiam) (explaining that void judgments are subject to the rules of procedure); *Newsom v. Ballinger Indep. Sch. Dist.*, 213 S.W.3d 375, 380 (Tex. App.—Austin 2006, no pet.) ("Even a void judgment can become final for the purposes of appeal." (citation omitted)); *In re Vlasak*, 141 S.W.3d 233, 238 (Tex. App.—San Antonio 2004, no pet.) ("[T]he judgment is void if challenged, but it is no less final.").

6

divorce today?" Daly responded simply, "I am." The judge then turned to Naylor and asked, "[A]re you also asking me to grant a divorce in this case?" When she responded that she was, the trial court announced, "The divorce is granted pursuant to the agreement you have recited into the record."

Because this oral pronouncement disposed of all issues between the two parties, and because the trial court indicated its intent to render immediate judgment, the announcement served as a binding judgment effective as of that moment. *See Dunn v. Dunn*, 439 S.W.2d 830, 833 (Tex. 1969) (explaining that final judgment is rendered when court orally announces its decision to grant divorce). The State's petition was therefore not timely when filed the next day, and the trial court chose not to set aside the judgment to entertain the State's arguments. Accordingly, and as a simple matter of fact and record, the State is not party to the case. The State's attempted appeal is thus improper unless it can establish an alternate basis for standing.

**B**

Although the right to appeal is generally limited to parties of record, a third party may file an appeal where the prospective appellant is "deemed to be a party" under the doctrine of virtual representation. *El Paso*, 1 S.W.3d at 110 (citations omitted). But to benefit from that doctrine, the prospective appellant must establish: "(1) it is bound by the judgment; (2) its privity of estate, title, or interest appears from the record; and (3) there is an identity of interest between the appellant and a party to the judgment." *Id.* (citing *Continental Cas. Co. v. Huizar*, 740 S.W.2d 429, 432 (Tex.1987) (Kilgarlin, J., concurring)). In the case before us, even the State concedes it cannot satisfy the elements of the doctrine.

7

To begin with, the State is not bound by the disputed divorce decree, which settles various domestic matters and indicates that the women wish to dissolve any marital union that might exist. For example, the contested judgment does not financially obligate the State in any respect. *Cf. Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 36 (Tex. 2008) (allowing insurance carrier to appeal following settlement); *In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 725 (Tex. 2005) (same). Nor does the judgment preclude the State from exercising any of its rights. *Cf. El Paso*, 1 S.W.3d at 110–111 (allowing State's appeal where trial court unexpectedly enjoined "all officials" from enforcing disputed statute). The State likewise alleges no interest in the terms of the settlement and already maintains that the women are not legally married. The decree does not bind the State in any way.

Nor has the State established identity of interest. In attempting to do so, the State relies heavily on *El Paso*, describing that case as "remarkably similar" to the circumstances at issue here. We disagree. *El Paso* arose from a constitutional challenge by a group of automobile dealers seeking to enjoin enforcement of certain statutory restrictions on their industry. 1 S.W.3d at 110. After filing suit against local officials, the dealers notified the State of the constitutional challenge, as required by Texas Civil Practice and Remedies Code section 37.006(b). *Id*. Upon receiving this notice, the State declined to intervene, explaining that the local authorities could "adequately present the issues to the court." *Id*. at 111. Unbeknownst to the State, the trial court eventually issued an order declaring the statute unconstitutional and enjoining enforcement of certain provisions. *Id*. at 110. When the trial court refused to allow the State to intervene to contest the adverse decision, the State

8

filed notice of appeal notwithstanding its undisputed status as a non-party. *Id*. This Court ultimately deemed the appeal proper, conferring third-party appellate standing via virtual representation. *Id*.

The court of appeals has already thoroughly explained how *El Paso* is distinguishable from this case. *See* 330 S.W.3d at 439–43. For present purposes, we note that in *El Paso* the State established the identity of interest notably absent here. The defendants in that case were fellow government entities imbued with shared authority to enforce the statutory restrictions the plaintiffs challenged. As the *El Paso* court of appeals explained:

> These [challenged] statutes display the privity and identity of interest between the parties to the suit and the Attorney General and Motor Vehicle Division. Both the Attorney General and the Motor Vehicle Division, like the [defendants], have a duty to enforce the challenged sections. In fact, the Attorney General derives enforcement power from the very same statute giving enforcement powers to the parties who participated in this case.

966 S.W.2d at 785 (citing TEX. TRANSP. CODE § 728.004(a)). Consequently, the State's interest in the case—its right to enforce the statutory scheme—was identical to that of the defendants.

We find no analogous identity of interest between the State and the parties to this dispute. The State contends Daly represented its interests at the trial court, as she originally contested Naylor's divorce petition. Yet the interests of Daly—who at all times asserted the legitimacy of her same-sex marriage—were never aligned with the State's. Although Daly ostensibly contested the divorce and even submitted briefs outlining the State's proposed alternate procedure for same-sex couples, Daly's counsel expressly distanced himself and his client from the State's position, explaining that he had "been given a lot of trouble about taking a position that from a theoretical and intellectual standpoint [he] might disagree with." He also expressed uncertainty as to whether the

9

State's voidance procedure would offer the relief requested, in direct contravention of the State's position on the matter. This is hardly zealous advocacy on behalf of the State of Texas, and it is certainly not the identity of interest necessary for the virtual-representation doctrine to apply. For these and the other reasons the court of appeals provides, we conclude that the doctrine cannot confer appellate standing upon the State.

## C

Recognizing that its predicament "does not map perfectly onto the virtual-representation doctrine," the State urges this Court to find an equitable basis for appellate standing in light of the unusual importance of the issues presented. We appreciate the significance of the State's substantive arguments. As a sovereign entity, the State has an intrinsic right to enact, interpret, and enforce its own laws. *See Printz v. United States*, 521 U.S. 898, 912 n.5 (1997) (explaining that all three branches of government inhere within the states' "nature as sovereigns"). This is particularly true with respect to law regarding the family, which is typically the "exclusive province of the States." *Sosna v. Iowa*, 419 U.S. 393, 404 (1975). The people and their duly elected representatives enacted these statutes; they reflect the deeply held beliefs of Texas voters. *See De Leon v. Perry*, 975 F. Supp. 2d 632, 642–43 (W.D. Tex. 2014) (explaining that the constitutional proposal prevailed in both houses of the Legislature and the subsequent referendum passed with "approximately 76% of the [popular] vote"). As a consequence, any challenge to our marriage law is an affront not only to the laws themselves, but also to the people of Texas. *See Veasey v. Perry*, 769 F.3d 890, 895 (5th Cir. 2014) (referring to the public interest in state legislation).

Yet while we recognize the import of the State's statutory and constitutional arguments, the State has identified no equitable doctrine that might allow it, as neither a factual nor virtual party, to seek appellate review of the trial court's judgment. The State insists this Court "has never limited post-judgment intervention to the virtual-representation context," but the State cites no precedent in which we allowed a third party to appeal without first satisfying the essential elements of the virtual-representation doctrine. The State further contends, "[T]he virtual-representation doctrine is not a crisp rule with sharp corners and must be determined on a case-by-case basis." This is true, in the sense that even where a third party satisfies the virtual-representation doctrine, intervention may yet be denied when it is unjust to existing parties. *See Lumbermens*, 184 S.W.3d at 725 ("[B]ecause the doctrine is equitable, we must determine whether other considerations weigh against applying the doctrine" to allow mandamus relief from trial court's refusal to allow post-judgment intervention.). But it does not follow that this equitable doctrine, as we have applied it historically, empowers the Court to create standing where none exists.

Indeed, in attempting to establish a right to third-party appeal the State conflates the question of whether a party with standing should be allowed to intervene on appeal with the predicate question of whether the party has standing at all. To be sure, "the right of intervention is ultimately rooted in equity." *Zeifman v. Michels*, 229 S.W.3d 460, 464 (Tex. App.—Austin 2007, no pet.) (citing *Highlands Ins. Co. v. Lumbermen's Mut. Cas. Co.*, 794 S.W.2d 600, 601 (Tex. App.—Austin 1990, no pet.)). As a result, Texas courts allow post-judgment intervention only upon careful consideration of any prejudice the prospective intervenor might suffer if intervention is denied, any prejudice the existing parties will suffer as a consequence of untimely intervention, and any other

11

circumstance that may "militat[e] either for or against [the] determination." *Lumbermens*, 184 S.W.3d at 726 (quoting *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005)); *see also Ledbetter*, 251 S.W.3d at 36 (explaining that late intervention is possible only where justice so requires and "there is neither unnecessary delay nor prejudice to the existing parties").

Yet before this Court or the court of appeals can evaluate the equity of intervention, the prospective intervenor must establish its standing to present its argument on appeal. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 151 (Tex. 2012) ("The court must consider this threshold question even before reaching the separate issue of whether it can certify the putative class." (citation omitted)). Indeed, "[s]tanding is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). Consequently, the existence of standing—or the lack thereof—is a rigid question of law that is not negotiable and cannot be waived. *Tex. Ass'n of Bus.*, 852 S.W.2d at 445. Neither this Court nor the court of appeals has the authority to expand the scope of its jurisdiction, the bounds of which are determined by our constitution and the Legislature.[3] We have no power to adopt the novel jurisdictional approach the State proposes, and we affirm the court of appeals' decision to dismiss the case for want of jurisdiction.

---

[3] *See Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996) (per curiam) ("This Court's jurisdiction, like that of all Texas courts, is conferred solely by the Texas Constitution and state statutes."). Nor would it be prudent to define standing as a variable function of miscellaneous political and equitable factors. The United States Supreme Court has repeatedly emphasized the folly of these jurisdictional concessions. "[T]he policy goal of minimizing litigation over jurisdiction is thwarted whenever a new exception . . . is announced." *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 580–81 (2004). In this case, well-settled principles indicate the State did not timely intervene, the virtual-representation doctrine does not apply, and the State has no standing to appeal the disputed decree. To hold otherwise would exceed our authority and undermine the governing body of law.

12

## III

In his dissenting opinion, JUSTICE WILLETT contends the State has standing to present its arguments and urges this Court to determine whether the trial court should have entertained the State's petition in intervention. Yet even assuming this Court has jurisdiction to reach that question, we would find no abuse of discretion in the trial court's decision not to consider the untimely petition.

The record reveals that the State, while fully aware of the public import of this private dispute, had adequate opportunity to intervene and simply failed to diligently assert its rights. This is not a case in which the State was unaware of the litigation or blindsided by the result. *Cf. El Paso*, 1 S.W.3d at 110–111. On the contrary, the State concedes it had monitored this ongoing dispute for months and could have intervened if it had chosen to do so. Indeed, the State had recently intervened in a similar dispute[4] and so had already prepared its legal arguments. So it likely would have required relatively little effort for the State to file a petition in intervention or submit an amicus letter informing the trial court of its concerns. Yet there is no record that the State made any such effort until after the trial court rendered judgment.

More importantly, where the Legislature has given no indication to the contrary the State must abide by the same rules to which private litigants are beholden. As we have already explained, "a plea in intervention comes too late if filed after judgment and *may not be considered unless and until the judgment has been set aside*." *White*, 682 S.W.2d at 252 (emphasis added) (citing *Comal Cnty. Rural High Sch. Dist. No. 705 v. Nelson*, 314 S.W.2d 956 (Tex. 1958)). A trial court has

---

[4] *See In re Marriage of J.B. and H.B.*, 326 S.W.3d 654, 659 (Tex. App.—Dallas 2010, pet. dism'd).

13

discretion to set aside its judgment in light of an untimely petition in intervention. *See* Tex. R. Civ. P. 329b(d) (affording trial courts thirty days to "vacate, modify, correct, or reform" judgment). Even so, the State did not ask the court to set aside or otherwise revisit the disputed divorce decree. *Cf. Terrazas*, 829 S.W.2d at 726 (finding abuse of discretion in refusal to allow post-judgment intervention where prospective intervenor moved for new trial in lieu of motion to set aside judgment). The State instead ignored the decree altogether, insisting the court lacked jurisdiction over the petition and therefore had no authority to adjudicate the dispute. Perhaps the State believed the judgment to be void *ab initio*, but even a flawed judgment is subject to our precedent and must be set aside before intervention is possible. *Middleton*, 689 S.W.2d at 213. Even when the presiding judge explained that he had already rendered judgment, the State maintained its original arguments and did not ask the court to set the decree aside so that intervention might be allowed. Nor has the State identified any authority requiring a judge to do so. Given the court's plenary authority over its order[5] and the State's failure to present its intervention argument in a manner consistent with governing precedent, the trial court did not abuse its discretion in declining to allow the contested intervention.

---

[5] *See Equitable Gen. Ins. Co. of Tex. v. Yates*, 684 S.W.2d 669, 670 (Tex. 1984) (describing the trial court's "great discretion" to decide whether to set aside judgment); *Conwill v. Gulf, C. & S.F. Ry. Co.*, 19 S.W. 1017, 1020 (1892) ("The court had the power to set aside the judgment, even having overruled an application for a new trial; but the exercise of this power is confided to its sound discretion."); *Childs v. Mayo*, 11 S.W. 154, 154 (1889) ("It is not a matter of course to set aside the judgment, but rather an exercise of the equitable discretion of the court upon the presentation of sufficient cause."); *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 294–95 (Tex. App.—Dallas 2009, no pet.) (describing the court's discretion as "practically unlimited" and "virtually absolute" (quoting *Rogers v. Clinton*, 794 S.W.2d 9, 12 (Tex. 1990) (Cook, J., dissenting))).

**IV**

The State also seeks mandamus relief from the trial court's adjudication of the divorce petition.[6] A writ of mandamus is an extraordinary remedy available "to correct an action of a trial judge who commits an abuse of discretion or a violation of a clear duty under the law." *State v. Walker*, 679 S.W.2d 484, 485 (Tex. 1984) (citing *State Bar v. Heard*, 603 S.W.2d 829, 834 (Tex. 1980)). Naylor and Daly dispute this Court's authority to reach the mandamus petition, alleging the State lacks the "justiciable interest" necessary to establish standing to raise a mandamus challenge to the disputed court order. *See Terrazas*, 829 S.W.2d at 723, 726 (allowing non-party to raise post-judgment mandamus challenge once it established "justiciable interest" in the judgment). We need not resolve the question of justiciable interest. Even assuming the State has standing to bring a mandamus action, its petition fails on the merits.

The Supreme Court of Texas shares mandamus jurisdiction with the courts of appeals. *See* TEX. GOV'T CODE §§ 22.002(b), 22.221. Although a relator may file a petition for writ of mandamus directly with this Court, these petitions usually originate in the lower courts. "If [a] petition is filed in the Supreme Court without first being presented to the court of appeals, the petition must state the compelling reason why the petition was not first presented to the court of appeals." TEX. R. APP. P. 52.3(e). The State argues it did not file a mandamus petition in the court of appeals because it thought it would have standing to appeal. A litigant's mistaken understanding of law is not a compelling reason for this Court to consider an unreviewed mandamus argument. The proffered

---

[6] The State does not request mandamus review of the court's refusal to entertain the petition in intervention. *Cf. Terrazas*, 829 S.W.2d at 726 (granting relief from trial court's rejection of untimely intervention where intervenors lacked standing to appeal but sought writ of mandamus).

reason seems particularly unpersuasive here, where just a few weeks earlier and with respect to the very same constitutional question, the State recognized the need to seek both appellate *and* mandamus relief from the court of appeals.[7]

The State further contends it did not submit its mandamus arguments to the court of appeals because the effort would have been futile. Specifically, the State describes the lower court as having "already made clear" its skepticism of the State's arguments. But the record belies this description—the court of appeals found no jurisdiction over the appeal and did not reach the merits of the State's arguments. *See Naylor*, 330 S.W.3d at 444 n.9 ("Having determined that we lack subject-matter jurisdiction over this appeal, we express no opinion on the remaining issues raised by the State."). Moreover, a party may not circumvent the court of appeals simply by arguing futility. This Court rejected the same argument under similar circumstances, insisting that the relator first seek relief from the court of appeals before approaching this Court. *See In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 729, 730 (Tex. 2006) (per curiam) (denying belated intervenor's mandamus petition where relator alleged the court of appeals had already rejected its arguments on direct appeal). Accordingly, we deny the State's petition for writ of mandamus.

## V

Finally, we would be remiss not to acknowledge JUSTICE DEVINE's careful and thorough treatment of the constitutional questions presented to the Court. The State asks us to determine whether Texas has a constitutional right to define marriage and whether state law precludes the trial

---

[7] *See In re Marriage of J.B.*, 326 S.W.3d at 659 (referring to both petitions). Equally unpersuasive is the State's argument that extraordinary relief is warranted because it has no remedy at law. The State would have had an adequate remedy if, at any point in its observation of this dispute, it had timely intervened and secured its right to direct appeal. *See Walker*, 679 S.W.2d at 485 (holding writ available only "when there is no other adequate remedy at law").

courts from offering divorce to same-sex couples. We have no quarrel with JUSTICE DEVINE's analysis. Nevertheless, the same constitutional principles that reserve each state's right to govern marriage also constrain the judiciary by limiting our reach to the adjudication of live controversies brought by parties with standing to appear before the courts. *See* U.S. CONST. art. III, § 2, cl. 1; *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442–43 (Tex. 1998) (citing TEX. CONST. art. II, § 1; art. IV, §§ 1, 22; and art. V, § 8); *Tex. Ass'n of Bus.*, 852 S.W.2d at 444 ("[W]e have construed our separation of powers article to prohibit courts from issuing advisory opinions because such is the function of the executive rather than the judicial department." (citations omitted)).

The constitutional questions presented here are raised by a litigant that failed to secure standing by properly presenting its arguments to the trial court and court of appeals. Consequently, this Court has no jurisdiction to reach those issues. *See Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999) (dismissing claims after finding plaintiff lacked standing). Moreover, neither of the lower courts addressed the merits of the constitutional issues raised. Therefore, even if the State could establish standing to present these arguments, we would have little choice but to remand those issues to one of the lower courts. *See Wal-Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280–81 (Tex. 1999) (per curiam) (remanding arguments where the court of appeals erred in deeming them waived). In short, "we reaffirm the well-settled prudential doctrine that cases should be decided on narrow, non-constitutional grounds whenever possible." *VanDevender v. Woods*, 222 S.W.3d 430, 433 (Tex. 2007).

Like JUSTICE DEVINE, we would appreciate the opportunity to address the merits of this issue of critical importance at this crucial juncture in our nation's history. Yet we must respect the bounds of our jurisdiction by addressing only the questions immediately before the Court. Having already done so, and for the reasons stated herein, we affirm the decision of the court of appeals and deny the State's petition for writ of mandamus.

 

_____
Jeffrey V. Brown
Justice

OPINION DELIVERED: June 19, 2015