# Supreme Court of Texas

No. 22-0242

Eve Lynn Baker,

*Petitioner*

v.

Terry Lee Bizzle,

*Respondent*

On Petition for Review from the
Court of Appeals for the Second District of Texas

JUSTICE YOUNG, joined by Chief Justice Hecht and Justice Blacklock, concurring.

The Court holds that the trial judge's email to the parties was not a "rendition" of a final judgment because a court "renders" judgment only with a public announcement of the decision, which the email did not do. I agree and join the Court's opinion, as well as Justice Lehrmann's scholarly concurrence. Both opinions correctly, comprehensively, and clearly describe current law.[*]

But I am unsatisfied with the status quo—*nobody* should be satisfied with it. Our system's tedious distinction among "rendering"

---

[*] Chief Justice Hecht and Justice Blacklock have not joined Justice Lehrmann's concurrence.

judgments, "signing" them, and "entering" them was necessary in early Texas, when judges would travel by horseback to attend court in far-flung locations. The confusion sown by these distinctions today, however, is needless and intolerable. Technology now permits judicial actions to be publicly disseminated with the click of a button and in the flash of an eye. Our law increasingly and wisely requires courts to provide notice this way, including in a statute the legislature adopted in its last regular session.

I therefore write separately to suggest that the time has come for proper changes—whether in procedural rules, statutes, or common law—to bring much-needed clarity and efficiency to our system of litigation. Specifically, we should consider banishing from current practice the distinctions among "rendering," "signing," and "entering," and enshrine those distinctions into Texas's storied legal history. This Court could achieve much of that goal through our rule-making authority, but legislative consideration of further statutory amendments would be necessary to truly move beyond our archaic system of judgment-formation.

**I**

As the Court explains, Texas law distinguishes among the rendition, signing, and entry of a judgment. *Ante* at 7–8. These three actions currently need not and often do not occur simultaneously. As we observed before the dawn of the current technological era, "[t]he day a judge signs an order is frequently, perhaps usually, after the time the judgment is rendered and surely it is before the judgment is entered." *Burrell v. Cornelius*, 570 S.W.2d 382, 384 (Tex. 1978).

This triadic system has always had problems, which remain serious. But the system developed for reasons rooted in the historic conceptions of

2

each step's role. Together, they formed a sensible structure, but one that I cannot imagine anyone building from scratch today.

The most important step was rendition, which the law has long understood as the "judicial act of the court in pronouncing the sentence of the law." Henry Campbell Black, *A Treatise on the Law of Judgments* 113 (1st ed. 1891). Rendition was the main event—the one that enforceably adjusted the rights of the parties. It could be either oral or written. *See, e.g., Dunn v. Dunn*, 439 S.W.2d 830, 832 (Tex. 1969).

"The entry of a judgment," by contrast, was (and is) "a ministerial act, which consists in spreading upon the record a statement of the final conclusion reached by the court in the matter." Black, *supra*, at 113–14; *see also Dunn*, 439 S.W.2d at 832 ("[T]he entry of a trial judgment is only a ministerial act."). Rendition, therefore, had to go first, and was deemed conceptually and temporally "independent of the fact of its entry" on the record. Black, *supra*, at 115. The ministerial entry of a rendered judgment was "not essential to the validity of the judgment itself," and the court clerk's failure to enter a judgment "[would] not, as between the parties, operate to invalidate the judgment." *Id.* at 119.

Signing was different still. As our system developed, the "requirement that a judge shall sign all judgments rendered in his court [was] merely *directory.*" *Id.* at 118. The signature, in other words, served as a kind of signal that should lead to entry—the signature was merely "the allowance or permission by the master, prothonotary, or other proper officer, to the plaintiff or defendant, to have judgment entered in his favor" by the court clerk. *Id.* at 117 n.11 (quoting *French v. Pease*, 10 Kan.

3

51, 55 (1872)).[1]

Historically, therefore, rendition was the central moment. If it was oral, busy courts, or clerks uninformed of the rendition, might fail to provide a subsequent signed judgment or enter the rendition into the record. *See, e.g.*, *Bassett v. Mills*, 34 S.W. 93, 94 (Tex. 1896) (explaining that a judgment was not entered in the record "by reason of some oversight"); *Trotti v. Kinnear*, 144 S.W. 326, 329 (Tex. Civ. App.— Galveston 1912, no writ) (explaining that the failure to have the judgment entered on the record "was due to the inadvertence or negligence of the clerk"). Signing or entry could be overlooked—perhaps for years. *See, e.g.*, *Burnett v. State*, 14 Tex. 455, 456 (1855) (authorizing the court to direct the clerk to enter on the record a judgment that "was actually made at a former term and omitted to be entered by the clerk"). A signed and entered

---

[1] But just as the lack of entry itself did not invalidate a judgment as between the parties, neither did the lack of a signature, because the judgment had "force and effect . . . whether it is ever signed by the judge or not." Black, *supra*, at 119. A signed judgment is not necessary for a judgment to bind the parties, as this Court has held and as lower courts occasionally continue to observe. *See, e.g.*, *Dunn*, 439 S.W.2d at 832–33; *In re Marriage of Martz*, No. 09-21-00048-CV, 2022 WL 2251731, at *5 (Tex. App.—Beaumont June 23, 2022, pet. denied) (citing *Dunn* for the proposition that a rendered judgment finally settles the parties' rights and is not affected by further proceedings). In practice, however, signed judgments are required, because without them, many other steps in the litigation process are impossible. *See, e.g.*, Tex. R. App. P. 26.1 (requiring a party to file a notice of appeal within 30 days after a judgment is signed); Tex. R. App. P. 4.2(c) (requiring judges to sign written orders finding when a party first received notice or acquired actual knowledge that a judgment was signed). Because of the impairment of parties' rights, a court that refuses to sign a judgment may become the proper target of a mandamus proceeding. *See, e.g.*, *In re Pete*, 607 S.W.3d 481, 483 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding) (conditionally granting mandamus relief requiring a court to sign a written order on a party's motion because "the act of committing the judgment or order to writing and signing it is a ministerial act").

judgment was always desirable, but—and this is what matters for today's purposes, and why I have belabored the point—those steps were not needed or expected *at the same time* as the court's rendition of judgment.

It may seem as though, even long ago, nothing justified dividing the stages of forming a court's judgment—a trifurcation, one might even say—but the opposite is true. As I see it, the system developed because of its practical benefits. Sometimes, judgments could not be quickly reduced to writing for public consumption, requiring delays between a judgment's rendition and its subsequent entry on the record. Litigants also benefited from the system—they could proceed as if bound by a final judgment without needing to wait for a written order to memorialize it.

The system also allowed judges to decide cases quickly, leaving it to clerks to enter their judgments while the judges traveled to other towns to decide cases. Such a scheme was especially helpful in early Texas, when a small number of judges "handled crowded dockets . . . traveling their multicounty circuits twice a year to hear daunting numbers of cases." James L. Haley, *The Texas Supreme Court: A Narrative History, 1836-1986*, at 33 (2013). In the days of the Republic, the justices of this Court were the district judges, plus a chief justice. Michael Ariens, *Lone Star Law: A Legal History of Texas* 201 (2011). Since the Supreme Court could not meet without the presence of a majority of the district judges, *id.*, a system that permitted their quick movement throughout Texas was important.

Historical roots like that one—and many others—illustrate why it often was essential for the key step of rendition to be distinct. But that does not mean that entry of the judgment was ever *unimportant*.

For example, a court's entry of judgment would "furnish an enduring memorial and incontestable evidence of the judgment, and . . . fix its date for purposes of . . . creating a lien." Black, *supra*, at 119. The entry of judgment, in other words, was historically understood as the effective date of notice to non-parties of the court's judgment.

Having a judgment properly appear in the record was also essential to establish a court's appellate jurisdiction. Regardless of when a judgment was rendered, if it was not entered into the record before a party appealed, courts would dismiss the appeal for lack of jurisdiction. *See, e.g.*, *Scott v. Burton*, 6 Tex. 322, 322 (1851) (dismissing an appeal from a judgment that was not entered on the record); *Simpson v. Bennett*, 42 Tex. 241, 241 (1874) (holding that "there [was] no final judgment" because "the record shows no final disposition of this case" and dismissing the appeal for lack of jurisdiction); *Mignon v. Brinson*, 11 S.W. 903, 904 (Tex. 1889) (dismissing a case for lack of jurisdiction because "an appeal will lie from the judgment entered").

Over time, the date a judgment was *signed* also grew in importance. Because renditions of judgment were not required to be in writing, they often were not written down for entry into the record, which made it difficult for parties to calculate procedural timelines.[2] For

---

[2] In part to avoid such problems, our rules of procedure—nearly from their birth—emphasized the date a judgment was signed to "insure [the judgment's] appearance of record," *Official Amendments to Texas Rules of Practice and Procedure in Civil Cases*, 8 Tex. B.J. 532, 534 (1945) (Rule 306a), and thus "enable the appellant to ascertain more definitely when the time to perfect an appeal begins to run," *Tentative Amendments to Rules of Civil Procedure*, 8 Tex. B.J. 405, 408 (1945); *see also Rogers v. Peeler*, 271 S.W.3d 372, 376–77 (Tex. App.—Texarkana 2008, pet. denied) (citing Texas Rule of Appellate

example, an early amendment to Rule 306a directed judges, attorneys, and clerks "to use their efforts to cause all judgments, decisions, and orders . . . to be reduced to writing and signed by the trial judge and the date of signing stated therein," but continued to acknowledge that the "absence of any such showing shall not invalidate any judgment or order." *Official Amendments to Texas Rules of Practice and Procedure in Civil Cases*, 8 Tex. B.J. 532, 533 (1945). A later amendment to Rule 306a "eliminate[d] the use of the term 'rendition of judgment,'" *Rules of Civil Procedure: New Amendments*, 43 Tex. B.J. 767, 778 (1980), to make abundantly clear that "[t]he date a judgment or order [was] *signed*" was what courts must use to "determine the beginning of the periods prescribed by these rules." *Id.* at 775 (emphasis added).[3]

Our law has also consciously reduced its emphasis on rendition of judgment to limit undesirable ambiguity. When parties get a rendition unaccompanied by other indicia of a judgment, they often have more questions than answers. Appearances can be deceiving. To be a binding rendition of judgment, for example, the oral pronouncement must "dispose[] of all issues between the two parties." *State v. Naylor*, 466

---

Procedure 26.1 and Texas Rule of Civil Procedure 329b when noting that "[t]he importance of the date the written judgment is signed is to provide certainty in calculating procedural timetables").

   [3] And as lawyers well know, today's rules trigger a host of vital deadlines or consequences based not on when judges *render* a judgment but when they *sign* it (or, sometimes, when that judgment is entered). *See, e.g.*, Tex. R. App. P. 26.1 (making notice of appeal due within 30 days after a judgment is signed); Tex. R. Civ. P. 510.8(b) (requiring justice courts, in judgments for a plaintiff in an eviction case, to render judgment "for possession of the premises, costs, delinquent rent as of the date of entry of judgment, if any, and attorney fees if recoverable by law").

S.W.3d 783, 789 (Tex. 2015). Otherwise, it is not a rendition at all—what *seems* like it would bind the parties in fact will not. And, as today's case reflects, a purported rendition of judgment will not qualify as a rendition if it is not *publicly* announced. *See Garza v. Tex. Alcoholic Beverage Comm'n*, 89 S.W.3d 1, 6 (Tex. 2002) ("[A] judgment is rendered when the decision is officially announced orally in open court, by memorandum filed with the clerk, or otherwise announced publicly."). Likewise, to count as a rendition, the trial court must "indicate[] its *intent* to render immediate judgment," and do so with clarity. *Naylor*, 466 S.W.3d at 789 (emphasis added). So if the court's pronouncement, even if public, does not "*clearly* indicate that [it] intended to render judgment," it simply fails to be a rendition of judgment that binds the parties. *S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995) (emphasis added).

Parties can hardly be faulted for worrying about whether something that *looks* like a rendition is clear enough, or public enough, or complete enough, to *be* a rendition. They should worry about it, because when a court defectively renders judgment, it can leave the parties in limbo, or worse. For example, if a court (for any of the reasons listed above, or more) defectively renders judgment declaring the parties divorced, the parties cannot know whether they are *actually* divorced. The same is true, of course, for other steps. When a court fails to sign a judgment or appealable order—or signs one without the parties knowing about it, *see, e.g.*, *In re Whataburger Rest.*, 645 S.W.3d. 188, 192–93 (Tex. 2022)—it may inject risk and uncertainty when parties attempt to calculate and abide by the relevant timelines for post-judgment motions and the filing of appeals.

In so many ways, therefore, our State's archaic system of judgment formation can create serious problems. The problems transcend substantive ambiguity ("am I divorced, or not?") because a defect in one step or another can pose jurisdictional consequences, as in *Whataburger*. *See id.* at 193–94 (mandamus relief required where appellate jurisdiction was not timely invoked due to the failure to notify parties of signed order). Circumstances like these can leave parties (and courts) to question whether a court even has jurisdiction to decide their case at all. *See, e.g.*, *Garza*, 89 S.W.3d at 2 (classifying the appeal as interlocutory and "dismissing the appeal for want of jurisdiction" because "the district court . . . never signed a judgment affirming the [challenged] administrative decision").

Problems like these waste the appellate courts' judicial resources, expand costs to the parties by thousands of dollars, prolong litigation by months or years, and potentially deprive citizens of their appellate rights altogether. Such a problem attributable to our system of judgment formation always presents a great and terrible irony—after all, in early Texas, the division of judgments *facilitated* efficient justice. Imagine, for example, if the law would not resolve even simple disputes for parties in remote areas until they waited for the judge to travel back to the city, issue written orders, give them to the clerk, and then send notification that all of this had happened—with the parties bound only then. What was meant for good can, as circumstances evolve, turn out for ill.

## II

Our divided system of judgment formation can do real harm, in other words. The question for today is whether the triad still provides

9

enough value to compensate for the harm. I doubt it. True, binding parties at the moment of rendition without requiring a simultaneous written order still has its benefits, especially where reducing a complex judgment to writing may take time. But this step usually can be handled expeditiously, and I doubt that the crutch of differentiating among "rendering," "signing," and "entering" a judgment is truly indispensable in any case. The one we decide today is one of many in which the current system engenders more confusion than clarity.

Nor is my observation today particularly novel. In 1976, when electronic filing or video conferencing were science fiction at best, Justice Reavley remarked for the Court that "[t]he opportunities for error and confusion may be minimized if judgments will be rendered only in writing and signed by the trial judge after careful examination." *Reese v. Piperi*, 534 S.W.2d 329, 330 (Tex. 1976). In other words, our judicial system should take every opportunity to extirpate rather than fertilize confusion.

Forty-eight years later, previously unimaginable information technology has created new opportunities for fostering clarity. Courts can simultaneously render, sign, and enter judgments on the record. Doing so electronically guarantees that it is done publicly. Given these new abilities, there is no excuse for not eliminating the "error and confusion," *id.*, that inhere in our current system. The judiciary and the legislature should consider taking up Justice Reavley's challenge. Better late than later yet.

Had we done so already, problems like the one we resolve today would not arise in the first place. Fixing the problem, however, is not something that can be done in a contested case like this one that

10

generates a judicial opinion. "[W]e do not exercise our rulemaking authority via judicial opinion." *In re Meador*, 968 S.W.2d 346, 351 (Tex. 1998). Instead, it will likely require a variety of revisions to the law governing Texas courts, both in our rules and in various statutes. As I noted above, many current rules and statutes are tied to a court's taking one action or another.[4] Some are of extreme importance,[5] others are relatively mundane,[6] but all of them would be better if we had a single moment of general applicability: the moment at which a court's decision is electronically added to the public docket. We can address some of this

[4] So many of the difficult cases arise in the family-law context because the Family Code contains many provisions that rely on this distinction. *See, e.g.*, Tex. Fam. Code § 263.4011 (requiring courts to render a final order within 90 days after the commencement of a suit affecting parent-child relationships); *id.* § 101.026 (defining "render" as "the pronouncement by a judge of the court's ruling on a matter" and providing that a court may render judgment by, among other things, a notation "on the court's docket sheet or by a separate written instrument"); *id.* § 85.041 (requiring courts that have rendered protective orders to give "to the respondent a copy of the order, reduced to writing and signed by the judge or master").

[5] *See, e.g.*, Tex. R. Civ. P. 306a(1) (providing that the court's plenary power and the deadline for parties to file post-judgment motions stems from the date the judgment was signed); Tex. R. App. P. 35.1 (requiring parties to file an appellate record within 60 days after a judgment is signed); Tex. R. Civ. P. 150 (providing that in cases where a judgment has been rendered, the suit may proceed to judgment if the cause of action survives a party's death).

[6] *See, e.g.*, Tex. R. App. P. 24.2(a)(2)(b) (providing that, in cases where a judgment is for recovery of an interest in personal property, a judgment debtor must post a bond that is more than the value of the property interest on the date when the court rendered judgment); Tex. R. Civ. P. 90 (requiring parties in nonjury cases to specifically point out pleading defects in writing before the judgment is signed); Tex. Water Code § 55.509 (detailing how courts render judgments in validation suits and providing that the judgment has res judicata effect only when entered); Tex. Civ. Prac. & Rem. Code § 51.013 (providing that writs of error, when available, may be taken at any time within six months after a final judgment is rendered).

11

in our administrative capacity after consultation with the Supreme Court Advisory Committee, including the participation of other interested parties. And the legislature can do so after consideration in its normal process, which would, of course, allow it to either make a wholesale reform or to do so in stages, if it chooses to act at all.[7]

Similar changes—or at least complementary changes—to what I suggest today have recently been made. In its most recent legislative session, the legislature passed and Governor Abbott signed a bill that requires trial and appellate courts to "deliver through the electronic filing system . . . to all parties in each case in which the use of the electronic filing system is required or authorized all court orders the court enters for the case." Act of May 29, 2023, 88th Leg., R.S., ch. 861, § 18.003, § 80.002 (codified at Tex. Gov't Code § 80.002(b)). This Court recently enacted amendments to the Texas Rules of Civil and Appellate Procedure to implement the legislative mandate. Order of September 8, 2023, Misc. Docket No. 23-9071 (modifying Tex. R. Civ. P. 21, 165a, 246, 298, 299, 299a, and 306a; Tex. R. App. P. 9.2; and Rule 2.7 of the Statewide Rules Governing Electronic Filing in Criminal Cases).

The new statute and new rules reflect an effort to create a legal culture of clarity and notice. This Court has long reiterated and enforced

---

[7] Various other statutes may bear reexamining in light of the systemic changes that I suggest today. Here are just a few possibilities: Tex. Gov't Code § 72.157 (requiring the clerk of the court to "enter" a copy of a protective order into the registry no later than 24 hours after the court "issues" the order); Tex. Lab. Code § 102.075 (requiring parties to appeal a judgment entered pursuant to an arbitration board decision within ten days of when the district court entered its judgment); Tex. Code Crim. Proc. art. 42.01 (defining a "judgment" as "the written declaration of the court signed by the trial judge and entered of record showing the conviction or acquittal of the defendant").

the overriding value of clarity to ensure that litigation proceeds on its merits without substantial rights being forfeited through procedural irregularity. For example, we granted conditional mandamus relief in *Whataburger* "because the clerk's failure to give notice of the trial court's order" prevented the exercise of relator's right to appeal. 645 S.W.3d at 194. The need for that relief arose because the trial judge *signed* something, which started a clock—but because nobody knew it, the clock ran out before the aggrieved party could act. The new statute and rules should eliminate this sort of trap. Our system would be better and clearer if the rules were triggered only when the order is in fact electronically filed. Put another way, the delivery of the orders should be the single point of their effectiveness, replacing the existing, antiquated medley.

\*   \*   \*

Our divided system of rendering, signing, and entering judgments creates far more problems than it solves—and needlessly. In today's technological era, we should no longer tolerate this confusing, error-inducing, and cost-imposing system. When the rules impose requirements tethered to rendition, signing, or entering, we should instead key those requirements to the electronic filing of an order. When statutes impose such requirements, the legislature could make the needed changes. I encourage not just the three branches of our state government but all relevant stakeholders to consider how our system can be improved along these lines to more effectively administer justice on behalf of the People of Texas.

_____
Evan A. Young
Justice

**OPINION FILED:** March 1, 2024

13