ACCEPTED
15-25-00023-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
5/5/2025 7:23 PM
CHRISTOPHER A. PRINE
CLERK

## NO. 15-25-00023-CV

In the Court of Appeals for the Fifteenth Judicial District
Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS

5/5/2025 7:23:25 PM
CHRISTOPHER A. PRINE
Clerk

State of Texas,

*Appellant*

*v.*

Nonparty Patient No. 1, Nonparty Patient No. 2, Nonparty Patient No. 3, Nonparty Patient No. 4, Nonparty Patient No. 5, Nonparty Patient No. 6, Nonparty Patient No. 7, Nonparty Patient No. 8, Nonparty Patient No. 9, Nonparty Patient No. 10, and Nonparty Patient No. 11,

*Appellees.*

On Appeal from the 95th Judicial District Court of Dallas County
Cause No. 25-DC-01823

## BRIEF FOR APPELLEES

Jervonne D. Newsome (Lead Counsel)
Texas Bar No. 24094869
jnewsome@winston.com
Thanh D. Nguyen
Texas Bar No. 24126931
tdnguyen@winston.com
Jonathan Hung
Texas Bar No. 24143033
johung@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
Evan D. Lewis
Texas Bar No. 24116670
edlewis@winston.com
Olivia A. Wogon
Texas Bar No. 24137299
owogon@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

ORAL ARGUMENT REQUESTED

Hollie M. Albin (*pro hac vice* forthcoming)
D.C. Bar No. 90029285
hmalbin@winston.com
**WINSTON & STRAWN LLP**
1901 L Street N.W.
Washington, D.C. 20036
Telephone: (202) 282-5000

David Phillips (*pro hac vice* forthcoming)
N.Y. Bar No. 6175863
dphillips@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue, 43rd Floor
New York, NY 10166
Telephone: (212) 294-6700

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

STATEMENT OF FACTS ......................................................................................2

SUMMARY OF THE ARGUMENT .......................................................................4

ARGUMENT ..........................................................................................................9

I.   THE STATE DOES NOT ENJOY SOVEREIGN IMMUNITY FROM
     THE DALLAS COUNTY PROCEEDINGS. ...............................................10

     A.   The Texas Supreme Court has held that the Rules apply to the State
          unless a carveout provision exists; here, there is no carveout
          provision. ..........................................................................................10

     B.   Texas Government Code § 22.004(a) and Rules of Civil Procedure
          815 and 816 make clear that sovereign immunity is an inapt
          framework for this dispute. ................................................................15

     C.   The Court should not extend sovereign immunity to Rule 176.6(e)
          and 192.6(a) proceedings in a parallel court. .....................................17

          1.   The sovereign immunity analysis involves a two-step
               analysis, which the State ignores in its brief.............................18

          2.   The Nonparty Patients' Dallas County litigation does not
               present an undue threat to the public fisc. ................................21

          3.   Applying Rule 176.6(e) to the State would preserve the
               separation of powers. ...............................................................23

          4.   There is no common-law tradition of extending sovereign
               immunity to parallel discovery disputes involving a
               subpoena....................................................................................25

          5.   The State's focus on Reata and Nazari is misplaced—those
               cases concerned counterclaims for which a money judgment
               would be entered, not an evidentiary privilege.........................26

     D.   Even if sovereign immunity did exist for this particular proceeding,
          the Legislature has waived it..............................................................27

          1.   Rule 176.6(e) would be meaningless unless immunity were
               waived. ......................................................................................28

          2.   Rule 176.6(e) contains no ambiguities, so the Court cannot
               resolve a nonexistent ambiguity in the State's favor. ...............29

     3.     Rule 176.6(e) presumes State participation. .............................29

     4.     The Rule contains built-in protections that limit the State's exposure. .................................................................................30

II.     THE NONPARTY PATIENTS NEVER RAISED A CHALLENGE ON BEHALF OF THE UNREPRESENTED PATIENTS ...................................31

PRAYER .................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*5653.041 Acre Ranch, L.P. v. Lewis-Watkins-Farmer Agency*,
2022 WL 1479477 (Tex. App.—Austin May 11, 2022, no pet.) .......................16

*Alexander v. City of Syracuse*,
132 F.4th 129 (2d Cir. 2025) ........................................................................2

*Bednarz v. State*,
176 S.W.2d 562 (1943).................................................................................11

*Canutillo Indep. Sch. Dist. v. Olivares*,
917 S.W.2d 494, 498 (Tex. App.-El Paso 1996, no writ) .................................11

*Carrasco v. Tex. Transp. Inst.*,
908 S.W.2d 575 (Tex. App.—Waco 1995, no writ)............................................11

*City of Conroe v. San Jacinto River Auth.*,
602 S.W.3d 444 (Tex. 2009) .......................................................................19

*City of Dallas v. Albert*,
354 S.W.3d 368 (Tex. 2011) ........................................................................19

*City of Dallas v. Dallas Black Fire Fighters Ass'n*,
353 S.W.3d 547 (Tex. App.—Dallas 2011, no pet.) .........................................16

*City of El Paso v. Heinrich*,
284 S.W.3d 366 (Tex. 2009) ........................................................................19

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992).....................................................................................27

*Davis v. City of San Antonio*,
752 S.W.2d 518 (Tex. App.—San Antonio 1988, no writ)...............................11

*In re E.M.*,
665 S.W.3d 832 (Tex. App.—Houston [14th Dist.] 2023, no pet.) ...................11

*Fireman's Ins. Co. v. Burch*,
442 S.W.2d 331 (Tex. 1968) .......................................................................30

*Henderson v. Shanks*,
449 S.W.3d 834 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)......................................................................................27

*Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty. Irrigation Dist. No. 1*,
669 S.W.3d 178 (Tex. 2023) ........................................ 15, 18, 19, 20, 21, 24, 25

*Lewis v. State*,
693 S.W.3d 453 (Tex. App.—Houston [14th Dist.] 2023, pet. denied)......................................................................................23

*Lowe v. Tex. Tech. Univ.*,
540 S.W.2d 297 (Tex. 1976) ...............................................................11, 14, 23

*Nazari v. State*,
561 S.W.3d 495 (Tex. 2018) ...........................................................13, 15, 25, 26

*PHI, Inc. v. Tex. Juv. Just. Dep't*,
593 S.W.3d 296 (Tex. 2019) ...........................................................................8

*Phillips v. McNeill*,
635 S.W.3d 620 (Tex. 2021) .........................................................................17

*Producers' Oil Co. v. State*,
213 S.W. 349 (Tex. App.—San Antonio 1919, no writ.)..................................10

*Reata Constr. Corp. v. City of Dallas*,
197 S.W.3d 371 (Tex. 2006) ........................ 5, 13, 15, 17, 18, 20, 21, 25, 26, 28

*State v. Naylor*,
466 S.W.3d 783 (Tex. 2015) .........................................................4, 5, 11, 12, 14

*Tex. Adjutant's Gen.'s Off. v. Ngakoue*,
408 S.W.3d 350 (Tex. 2013) .........................................................................13

*Tex. Credit Co. v. O'Farrell*,
177 S.W.2d 331 (Tex. App.—Galveston 1944, no writ.)..................................17

*Tex. Dep't of Corr. v. Herring*,
513 S.W.2d 6 (Tex. 1974)....................................................4, 5, 11, 12, 14, 23

*Tex. Dep't of Hum. Servs. v. Green*,
   855 S.W.2d 136 (Tex. App.—Austin 1993, writ denied),
   *superseded by statute on other grounds*, *Neighborhood Ctrs. Inc. v.*
   *Walker*, 544 S.W.3d 744 (Tex. 2018) ................................................................11

*Tex. Dep't of Parks & Wildlife v. Miranda*,
   133 S.W.3d 217 (Tex. 2004) .....................................................................8

*Texas Co. v. State*,
   281 S.W.2d 83 (Tex. 1955)........................................10, 12, 14, 23, 28

*Wichita Falls State Hosp. v. Taylor*,
   106 S.W.3d 692 (Tex. 2003) ............................... 7, 9, 20, 26, 27, 28, 29

**Statutes**

Expedited Declaratory Judgment Act ...................................................................19

Tex. Bus. & Com. Code § 17.47(a) ......................................................................2

Tex. Bus. & Com. Code § 17.47(c)(1)...................................................................2

Tex. Civ. Prac. & Rem. Code § 101.025(a).........................................................26

Tex. Deceptive Trade Practices Act..................................................................2, 14

Tex. Gov't Code § 22.004(a) ................................. 5, 9, 10, 14, 15, 17, 22

Tex. Gov't Code § 22.004(b)................................................................................23

Tex. Gov't Code § 74.024(c)(6) ..........................................................................22

Tex. Gov't Code § 74.024(d)...............................................................................23

Tex. Gov't Code § 311.034..................................................................................19

Tex. Health & Safety Code § 161.706..................................................................2

**Other Authorities**

William V. Dorsaneo III, *The History of Texas Civil Procedure*, 63
   Baylor L. Rev. 713 (2014) ...................................................................23

Justice Nathan L. Hecht, Justice Jane N. Bland, et al., *How Texas Court Rules Are Made*, Texas Supreme Court, https://www. txcourts.gov/media/1374851/How-Court-Rules-Are-Made.pdf ........................23

Tex. Const. art. V, § 31(b) ................................................................22

Tex. R. Civ. P. 5................................................................................15

Tex. R. Civ. P. 33..............................................................................16

Tex. R. Civ. P. 38(a) .........................................................................16

Tex. R. Civ. P. 40..............................................................................17

Tex. R. Civ. P. 47(a) .........................................................................14

Tex. R. Civ. P. 58..............................................................................15

Tex. R. Civ. P. 67..............................................................................11

Tex. R. Civ. P. 74(a) .........................................................................14

Tex. R. Civ. P. 90..............................................................................11

Tex. R. Civ. P. 94..............................................................................11

Tex. R. Civ. P. 168............................................................................11

Tex. R. Civ. P. 169............................................................................11

Tex. R. Civ. P. 176.6(e) .................. 1, 2, 3, 4, 7, 9, 12, 17, 22, 23, 24, 26, 27, 28, 29

Tex. R. Civ. P. 192.6(a) ...........................................................2, 12, 17

Tex. R. Civ. P. 192.6(b) ....................................................................12

Tex. R. Civ. P. 202............................................................................16

Tex. R. Civ. P. 299............................................................................11

Tex. R. Civ. P. 815.............................................................5, 9, 10, 14, 15, 17

Tex. R. Civ. P. 816......................................................... 5, 9, 10, 14, 15, 16, 17

Tex. R. Evid. 509 .........................................................................2, 12

Tex. R. Evid. 510 ........................................................................2, 12

## STATEMENT OF THE CASE

*Nature of the Case:* After the State served two subpoenas in Dallas County, eleven Nonparty Patients challenged the breadth of those subpoenas in the same county. CR.233. The Nonparty Patients argued the State improperly sought records protected by the physician-patient privilege and mental health information privilege. CR.234; *see also* Tex. R. Evid. 509, 510.

*Trial Court:* 95th Judicial District Court, Dallas County
The Hon. Monica McCoy Purdy

*Course of the Proceedings:* The State filed a plea to the jurisdiction and a plea in abatement, arguing that (1) sovereign immunity shielded it from any Dallas County court proceeding, and (2) a Collin County court's dominant jurisdiction precluded the Dallas County court from issuing any ruling. CR.340.

*Disposition of the Trial Court:* The trial court denied the State's pleas during a hearing. CR.401; RR.36. The court then heard argument on the Nonparty Patients' petition for protection. RR.36. In the middle of that proceeding, the State filed an interlocutory appeal, and the trial court stayed all production obligations under the subpoenas. CR.402–03, 426; RR.56, 58, 60–61, 63, 66.

## STATEMENT OF JURISDICTION

The Court has jurisdiction under Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) and Tex. Gov't Code § 22.220(d)(1).

# ISSUES PRESENTED

1. When the State initiates a lawsuit, do the Texas Rules of Civil Procedure and Rules of Evidence presumptively apply to it?

2. When the State initiates a lawsuit in one county and a nonparty initiates a Rule 176.6(e) proceeding in another county, does sovereign immunity shield the State from the second proceeding, even though the Rule expressly authorizes the second proceeding?

3. Assuming sovereign immunity attaches to the second proceeding as a matter of common law, has the Legislature waived immunity?

4. Did the Nonparty Patients formally challenge the State's subpoenas on behalf of the unrepresented patients, or did they merely raise concerns in their capacity as officers of the court with a duty of candor?

## INTRODUCTION

At its core, this appeal involves a straightforward question about venue. Relevant here is Texas Rule of Civil Procedure 176.6(e). Under that Rule, a nonparty who wants to challenge a subpoena can do so in one of two places: the county of service, or the county where the underlying lawsuit originated. Tex. R. Civ. P. 176.6(e). Here, the Nonparty Patients chose the county of service. So far, so good.

But what should have been a routine discovery dispute argued in Dallas has become unnecessarily complicated. Even though the Nonparty Patients adhered to Rule 176.6(e)'s venue provision, the State claims their choice of venue should be disregarded under an incoherent theory of sovereign immunity. Br. at 6–10. The State mistakenly believes that when it acts as a plaintiff, sovereign immunity protects it from any Rule 176.6(e) proceeding, and the only valid forum for a Rule 176.6(e) challenge is the county where the State originally filed suit. RR.15; Br. at 10. But the State has identified no authority that says sovereign immunity allows the courts to give credence to only half of Rule 176.6(e)'s venue provision and ignore the other half. *Id.* In fact, numerous authorities—including precedent from the Texas Supreme Court—say otherwise.

The Court should not adopt the State's flawed interpretation, and it should affirm the court below.

1

**STATEMENT OF FACTS**

The facts underlying this appeal are straightforward. In 2024, the State sued Dr. May C. Lau in Collin County, alleging that she violated SB 14 and the Texas Deceptive Trade Practices Act ("DTPA") when she provided gender-affirming care to 21 minors and billed insurance entities for that care. CR.43–44, 52, 69. Relevant here, the State sought $10,000 in civil penalties for each DTPA violation and injunctive relief. CR.75; *see* Tex. Health & Safety Code § 161.706 (authorizing injunctive relief for SB 14 violations); Tex. Bus. & Com. Code § 17.47(a), (c)(1) (same, but civil penalties and injunctive relief for DTPA violations).

To gather discovery for its case, the State subpoenaed two hospitals to obtain the medical records of 21 patients. CR.22, 27–28, 31, 36–37.[1] The State served the subpoenas in Dallas County, and, consistent with Rule 176.6(e), eight patients filed an original petition for protection in that County. CR.11, 22, 31; *see* Tex. R. Civ. P. 176.6(e). This pleading invoked the privacy protections guaranteed by Texas's physician-patient privilege and mental health information privilege. CR.12; Tex. R. Evid. 509, 510. It also cited Texas Rules of Civil Procedure 176.6(e) and 192.6(a) to show that they could challenge the subpoenas in Dallas County. CR.11–13.

---

[1] To maximize readability, when the Nonparty Patients quote caselaw, the record, and other materials, they will accept all alterations and omit all internal citations, quotation marks, and footnotes, unless otherwise noted. *See Alexander v. City of Syracuse*, 132 F.4th 129, 138 n.2 (2d Cir. 2025) (doing the same).

The Nonparty Patients then amended their petitions twice. The first amended petition added three Nonparty Patients. CR.102. The second added two paragraphs on sovereign immunity. CR.235–36. The second amended petition is the live pleading in this matter.

In the proceedings below, the State argued the Dallas County court could not rule on the Nonparty Patients' Rule 176.6(e) challenges. CR.346–51; RR.15, 28–29. It filed a plea to the jurisdiction and a plea in abatement to this effect, which, respectively, argued that sovereign immunity shielded the State from any discovery challenge filed in Dallas County (but not Collin County), and that dominant jurisdiction required the Dallas County court to pause its proceedings. *Id.*

The Dallas County court then held a hearing on the pleas. RR.6. The court orally denied both pleas and signed a written order, after which it proceeded to hear argument on the Nonparty Patients' request for protection. CR.401; RR.36. But before that argument could conclude, the State advised that it had filed an interlocutory appeal challenging the trial court's sovereign immunity ruling. CR.426; RR.56, 58. The trial court then stayed the hospitals' production obligations under the subpoenas. CR.402–03; RR.60–61, 63, 66; *see also* CR.430 (explaining why the trial court's stay preserved the status quo). Briefing in this Court followed.[2]

---

[2] As the State's opening brief explains, there are two trial court proceedings involving another physician, Dr. M. Brett Cooper, and three related appellate proceedings. Br. at 2. Although the facts and legal issues in those matters overlap

3

**SUMMARY OF THE ARGUMENT**

The State's argument principally focuses on sovereign immunity, and its analysis is wrong all the way down. Caselaw from the Texas Supreme Court, the text of the Rules themselves, and the two-step sovereign immunity analysis show that the State's position does not measure up under any standard.

***First***, the Texas Supreme Court has foreclosed the State's arguments. The high Court has long held that, as a default matter, the Rules of Civil Procedure and Evidence apply to the State. *See State v. Naylor*, 466 S.W.3d 783, 792 (Tex. 2015); *Tex. Dep't of Corr. v. Herring*, 513 S.W.2d 6, 7–8 (Tex. 1974). The State can only escape a Rule's application if the Rule explicitly says so. *Herring*, 517 S.W.2d at 7–8. Here, none of the four Rules at issue announce an exception for the State. That dooms the State's argument, and Rule 176.6(e)'s entire venue provision applies.

The State's argument to the contrary gets the law backwards. It is true that where a litigant asserts a *cause of action* against the State—be it a plaintiff, defendant, third-party plaintiff, or intervenor—the usual presumption is that sovereign immunity exists under the common law, and the courts must discern whether the Legislature has clearly waived immunity. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374–75 (Tex. 2006). But in the context of the *Rules*—which

---

with this appeal, for the sake of brevity, the Nonparty Patients will omit them from their discussion.

are different from constitutional, statutory, and common law causes of action—the presumption is inverted. When a Rule is at issue, courts *presume* it applies to the State in its entirety *unless* an express carve out provision says otherwise. *Naylor*, 466 S.W.3d at 792; *Herring*, 513 S.W.2d at 7–8. Here, the Rules apply to the State in full force.

**Second**, a statute and two Rules of Civil Procedure teach that sovereign immunity is an inapt framework. Texas Government Code § 22.004(a) and Rule 815 prohibit courts from using the Rules to expand or abridge any substantive rights. *See* Tex. Gov't Code § 22.004(a); Tex. R. Civ. P. 815. Similarly, Rule 816 prohibits courts from using the Rules to extend or limit a court's jurisdiction. These authorities show sovereign immunity is an irrelevant concept when it comes to analyzing the Rules. That's because any analysis that presumes the Rules are imbued or not imbued with sovereign immunity, and therefore apply or do not apply to the State, necessarily expands or limits the State's substantive rights and the judiciary's jurisdiction. That would contravene Rules 815 and 816. Section 22.004(a) and Rules 815 and 816 help explain why the Texas Supreme Court has repeatedly said the Rules presumptively apply to the State without ever mentioning how sovereign immunity played a role in its reasoning.

**Third**, common law principles do not support extending sovereign immunity to these circumstances. For starters, the Nonparty Patients have surveyed more than

5

130 Texas Supreme Court cases. *See* App'x A. They have located no instance in which a court held the State enjoys immunity from a privilege assertion raised in response to a State-issued subpoena. That makes sense, since any such ruling would eviscerate any privilege.

What is more, the two common law justifications for sovereign immunity do not support its application here. The first justification—preventing undue threats to the public fisc—is not implicated. Here, any depletion of public funds resulted from the State's own actions. The State *chose* to sue Dr. Lau. It also *chose* to seek the records of 21 patients. When the State decides to place certain matters at issue, courts presume that the State believed the accompanying litigation costs would be a worthwhile expenditure of taxpayer dollars. In this case, it is hypocritical for the State to use public resources to seek the medical records of the Nonparty Patients and, in the same breath, argue the ensuring evidentiary challenges created an *unanticipated* threat to the public fisc. The argument rings especially hollow because the State has conceded that it is willing to litigate the Nonparty Patients' privilege challenges in Collin County. Br. at 10. Thus, it is undisputed that regardless of which court adjudicates the Nonparty Patients' evidentiary challenges, public resources will be used. This common law factor would not be served if sovereign immunity extended to the Dallas County proceedings.

6

The second common law consideration—preserving the separation of powers—weighs *against* extending sovereign immunity to the Dallas County proceedings. The Rules are a product of both the judiciary and the Legislature's reasoned judgment. Given that two branches of government create the Rules, a holding in the State's favor would *disturb* the separation of powers, not preserve it. The State cannot undermine the intentions of its co-equal branches by picking and choosing whatever text it wants to follow.

*Fourth*, even if the common law extended sovereign immunity to a parallel Rule 176.6(e) proceeding, the Legislature has clearly and unambiguously waived it. The four *Taylor* factors lead to this conclusion. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697–98 (Tex. 2003). Under these factors, the Rule would make little sense if sovereign immunity barred litigation in the county of service; the Rule unambiguously applies to "all parties" without exception; the Rule presumes the State's participation if it is a subpoena's issuer; and the Rule's application would not impose financial liability on the State.

*Finally*, the State raises a non-issue to accompany its sovereign immunity arguments: That the Nonparty Patients lack standing to raise challenges on behalf of the unrepresented patients. Br. at 13–14. This issue is not properly before the Court. The Nonparty Patients have never litigated on behalf of the unrepresented patients. True enough, the Nonparty Patients *raised concerns* about the unrepresented

7

patients' rights, but their statements did not amount to a formal challenge for the trial court's adjudication. CR.226–27; RR.49–50. The record shows that the Nonparty Patients simply gave the Court context to help it understand the sprawling nature of the State's litigation. *Id.* Any standing challenge should thus be considered by the trial court in the first instance and not this Court. Percolating the issue is important because there has been no opportunity for the Nonparty Patients to develop the record on how records for unrepresented patients may be commingled with the represented patients, such as provider emails or visit logs. There is ultimately no standing issue ripe for the Court to review, so any ruling on this front would amount to an impermissible advisory opinion.

Across the board, the Court should affirm.

## STANDARD OF REVIEW

This Court reviews a trial court's ruling on a plea to the jurisdiction *de novo*. *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 302 (Tex. 2019). Where, as here, the State only challenges the sufficiency of a pleading's allegations, the Court construes the pleadings liberally in favor of the Nonparty Patients and looks to their intent. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

## ARGUMENT

No matter how the Court slices it, sovereign immunity does not shield the State from a parallel Rule 176.6(e) proceeding. The Texas Supreme Court has made it clear that, absent a special provision to the contrary, the Rules apply to the State just as they would for any other litigant. What is more, Section 22.004(a) of the Texas Government Code, Rule 815, and Rule 816 establish that sovereign immunity is ill-suited for disputes about a Rule's applicability.

Still, assuming the foregoing authorities did not exist, a proper sovereign immunity analysis still compels affirmance. In a fulsome sovereign immunity interrogation, the Court asks two questions. First, would the common law apply immunity to the proceeding at issue? If the answer is no, the analysis ends. Immunity cannot be waived if it does not exist.

If the answer is yes, the Court continues and asks: Has the Legislature nevertheless waived immunity? Relevant to this appeal are the four *Taylor* factors. They all support waiver.

Lastly, the State raises a non-issue for the Court's consideration. It argues that the Nonparty Patients cannot assert any privileges on behalf of the unrepresented patients. Br. at 13. But the Nonparty Patients never did so, and the State made no such arguments below. This issue is not properly before the Court.

9

Below, the Nonparty Patients' discussion begins with the most decisive authorities—Texas Supreme Court precedent and the plain text of Section 22.004(a), Rule 815, and 816. The Court's analysis could stop there. Still, for the sake of completeness, the Nonparty Patients indulge the State's misguided reliance on sovereign immunity and conduct a full sovereign immunity analysis. That analysis still leads to affirmance.

## I. THE STATE DOES NOT ENJOY SOVEREIGN IMMUNITY FROM THE DALLAS COUNTY PROCEEDINGS.

### A. The Texas Supreme Court has held that the Rules apply to the State unless a carveout provision exists; here, there is no carveout provision.

Texas appellate courts have repeatedly said the Rules apply to the State unless the text says otherwise. Indeed, more than a hundred years ago, the San Antonio Court of Appeals announced that the State enjoyed "no special *immunities* and privileges" when it came to the "rules of evidence and rules of procedure." *Producers' Oil Co. v. State*, 213 S.W. 349, 352 (Tex. App.—San Antonio 1919, no writ.) (emphasis added). Later, in 1955, the Texas Supreme Court approvingly cited the intermediate court to explain that "[w]hen the state becomes a litigant in the courts[,] it must observe and is bound by the same rules of procedure that bind all other litigants, *except where special provision is made to the contrary*." *Tex. Co. v. State*, 281 S.W.2d 83, 90 (Tex. 1955) (emphasis added).

This pronouncement remains good law. In fact, the high Court has continually reaffirmed it. In 1974, the Court reiterated that the State must not only abide by the

10

Rules of Civil Procedure, but it must also follow the "rules governing evidence." *Herring*, 513 S.W.2d at 7–8. More recently, in 2015, the Texas Supreme Court said that "where the Legislature has given no indication to the contrary, the State must abide by the same *rules* to which private litigants are beholden." *Naylor*, 466 S.W.3d at 792 (emphasis added).

Other examples abound. *See Lowe v. Tex. Tech. Univ.*, 540 S.W.2d 297, 300–01 (Tex. 1976) (applying Rule 168, which governs interrogatories and contains no carveout provisions, to the State); *Bednarz v. State*, 176 S.W.2d 562 (1943) (same, but Rules 67, 90, and 299, which, respectively, govern certain pleading amendments, waiver, and omitted factual findings); *Sec. Tr. Co. of Austin v. Lipscomb Cnty.*, 180 S.W.2d 151, 159 (Tex. 1945) (explaining, in the *res judicata* context, the State "is subject to the same rules that govern other parties and a judgment") when it becomes a party to a lawsuit). Decisions from the intermediate courts of appeals are replete with similar examples.[3]

---

[3] *See In re Google LLC*, 705 S.W.3d 479, 483–84 (Tex. App.—Austin [15th Dist.] 2025, no pet.) (applying Rule 199, which governs depositions, to the State because its broad language encompassed the State and no exception to the contrary existed); *In re E.M.*, 665 S.W.3d 832, 835–36 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (explaining Rule 13, which governs sanctions, can be imposed on the State, even though Rule 13 was silent on its application to the State); *In re Commitment of Young*, 410 S.W.3d 542, 546–47 (Tex. App.—Beaumont 2013, no pet.); *Canutillo Indep. Sch. Dist. v. Olivares*, 917 S.W.2d 494, 498 (Tex. App.—El Paso 1996, no writ) (same, but Rule 94, which governs pleading standards); *Davis v. City of San Antonio*, 752 S.W.2d 518, 519 (Tex. App.—San Antonio 1988, no writ) (same); *Carrasco v. Tex. Transp. Inst.*, 908 S.W.2d 575, 579 (Tex. App.—Waco

Applying the Texas Supreme Court's straightforward edict makes this case an easy one. The proceedings below implicated two procedural rules and two evidentiary rules. The first procedural rule, Rule 176.6(e), allows the Nonparty Patients to challenge the State's subpoenas in either Dallas County or Collin County:

> [A]ny . . . person affected by the subpoena, may move for a protective order under Rule 192.6(b)—before the time specified for compliance— either in the court in which the action is pending or in a district court in the county where the subpoenas was served.

Tex. R. Civ. P. 176.6(e).

The second procedural rule contains similar language, though it has no venue provision:

> [A]ny . . . person affected by the discovery request, may move . . . for an order protecting that person from the discovery sought.

Tex. R. Civ. P. 192.6(a).

Neither Rule contains a carveout provision for the State. So too with the evidentiary Rules. *See* Tex. R. Evid. 509, 510. Because the four Rules say nothing

---

1995, no writ) (same, but Rule 169, which governed requests for admissions at the time); *Tex. Dep't of Hum. Servs. v. Green*, 855 S.W.2d 136, 145 (Tex. App.—Austin 1993, writ denied) (same, but Evidence Rule 103(a), which governs the procedure for preserving evidentiary errors for appeal), *superseded on other grounds*, *Neighborhood Ctrs. Inc. v. Walker*, 544 S.W.3d 744, 748 (Tex. 2018) (explaining Legislature modified the Texas Whistleblower Act, which formed the basis of the *Green* proceedings, but saying nothing about changes to Evidence Rule 103(a)); *Mokry v. Univ. of Tex. Health Sci. Ctr. at Dallas*, 529 S.W.2d 802, 805 (Tex. App.—Dallas 1975, writ ref'd n.r.e.) (applying Rule 168, which governs interrogatories, to the State).

about exempting the State from their application, their entire text applies to the State. *Naylor*, 466 S.W.3d at 792; *Herring*, 513 S.W.2d at 7–8; *Tex. Co.*, 281 S.W.2d at 90; *Lowe*, 540 S.W.2d at 300–01. The State must adhere to Rule 176.6(e)'s venue provisions just like every other litigant.

The State's argument to the contrary gets the law backwards. It contends that sovereign immunity presumptively shields it from the Nonparty Patients' evidentiary contentions in Dallas County, and the Nonparty Patients must show the Legislature clearly and unambiguously waived immunity. *See* Br. at 6–7. But the cases cited by the State are inapposite. Those decisions involved situations in which a *party* lodged an affirmative *cause of action* against the State—not a *nonparty* who asserted an evidentiary *privilege*. *See* Br. at 7–8 (citing, among other cases, *Reata*, 197 S.W.3d at 373 (third party asserted negligence claim against a governmental entity); *Nazari*, 561 S.W.3d at 499 (defendant asserted civil conspiracy, breach of contract, and conversion claim against the State); and *Tex. Adjutant's Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 352 (Tex. 2013) (plaintiff asserted negligence claim against governmental entity)). The shoe does not fit.

The State latches onto the word "claim" to conflate a cause of action with a "claim" of evidentiary privilege. *See, e.g.*, Br. at 10. But its discussion glosses over the fundamental differences between a cause of action and a privilege assertion. Causes of actions come with affirmative defenses, essential elements, jury

13

instructions on those elements, and, potentially, a final judgment imposing or absolving a defendant of liability. A privilege assertion, on the other hand, comes with none of these things. Although privilege assertions affect the quantum of evidence that will ultimately be presented to a factfinder, they are procedural and not substantive. The distinction matters. The differences between a cause of action and a privilege assertion help reconcile why the Texas Supreme Court has announced different presumptions for claims against the State and when to apply a Rule to the State. They also explain why, in all the Texas Supreme Court cases cited above—*Herring*, *Texas Co.*, *Naylor*, and *Lowe*—the Texas Supreme Court never mentioned sovereign immunity in its reasoning.

Moreover, the Texas Supreme Court's interpretive approach makes sense. Taking the State's argument to its logical endpoint, a ruling in its favor would mean that most of the Rules of Civil Procedure and Evidence do not apply to the State. For instance, Rule 47(a) requires petitions to give "fair notice," but it is silent on whether it applies to the State. Tex. R. Civ. P. 74(a). Under the State's logic, it does not have to give Dr. Lau fair notice of the State's SB 14 and DTPA claims against her. That is an absurd result. A holding in the State's favor would essentially mean *hundreds* of procedural rules do not apply to the State. The Nonparty Patients have not found any caselaw that would endorse such a result. *See* App'x A. Nor has the State.

14

**B.** **Texas Government Code § 22.004(a) and Rules of Civil Procedure 815 and 816 make clear that sovereign immunity is an inapt framework for this dispute.**

What is more, the Legislature has declared that sovereign immunity is an inapplicable conceptual framework with which to interpret the Rules. *See* Tex. Gov't Code § 22.004(a). Rules 815 and 816 reinforce this understanding. *See* Tex. R. Civ. P. 815, 816.

Section 22.004(a) prohibits the Rules from abridging, enlarging, or modifying a substantive right. Tex. Gov't Code § 22.004(a). Rule 815 contains similar language. *See* Tex. R. Civ. P. 815. As for Rule 816, it says that courts cannot use the Rules to "extend or limit the jurisdiction of the courts." Tex. R. Civ. P. 816.

Unquestionably, sovereign immunity is a substantive right. It can either protect the State from a lawsuit altogether or function as an affirmative defense. *See Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty. Irrigation Dist. No. 1*, 669 S.W.3d 178, 182 & n.1 (Tex. 2023). Read properly, Section 22.004(a) and Rule 815 forbid the Court from using the Rules to shape the contours of this substantive right. Likewise, because sovereign immunity implicates subject matter jurisdiction, the Court cannot use the Rules as a substantive source for determining its subject matter jurisdiction.[4] *Nazari v. State*, 561 S.W.3d 495, 500 (Tex. 2018).

---

[4] The Nonparty Patients intentionally say sovereign immunity "implicates" subject matter jurisdiction. *Nazari*, 561 S.W.3d at 500 (using this same verbiage); *Reata*, 197 S.W.3d 371, 379–84 (Brister, J., concurring) (explaining how sovereign

To be sure, a trial court can use the Rules to *facilitate* a ruling on sovereign immunity. For example, it can draw from Rule 5 to extend a deadline to file briefs on the issue. *See* Tex. R. Civ. P. 5. It can also invoke Rule 58 to adopt-by-reference other parts of the record to help it reach an immunity ruling. *See* Tex. R. Civ. P. 58. Thus, even though a trial court can draw from the Rules to develop *a process* for resolving an immunity dispute, it cannot say sovereign immunity is inured into a Rule, or that it shields the State from a Rule's application. That would contravene Section 22.004(a), Rule 815, and Rule 816's command that the Rules cannot abridge, modify, or enlarge the State's substantive rights and the court's jurisdiction.

Rule 33 is instructive. Under that provision, if a plaintiff sues a county, city, town, or village, the plaintiff must use the municipality's "corporate name." Tex. R. Civ. P. 33. As the Rule's text makes plain, Rule 33 certainly *recognizes* that, at times, sovereign immunity does not protect municipalities from a lawsuit or judgment. Otherwise, there would be no need for Rule 33's mandate on naming municipalities. Still, the Rule *itself* does not waive immunity. Under Section 22.004(a), Rule 815, and Rule 816, a court cannot hold that Rule 33 waives sovereign immunity, so long that a plaintiff uses the correct "corporate name" for a county, city, town, or village in its pleadings.

---

immunity shares many characteristics with, but is ultimately different from, subject matter jurisdiction).

16

Caselaw confirms the Nonparty Patients' understanding. Recently, the Austin Court of Appeals held that a litigant cannot use Rule 38(a), which governs third-party joinder, to create an exception to the jurisdictional doctrine of ripeness. *5653.041 Acre Ranch, L.P. v. Lewis-Watkins-Farmer Agency*, 2022 WL 1479477, at *3 (Tex. App.—Austin May 11, 2022, no pet.). In so ruling, the intermediate court cited Rule 816 and explained the Rules of Civil Procedure "cannot grant jurisdiction when it is otherwise lacking." *Id.* Similarly, the Dallas Court of Appeals has held that Rule 202, which authorizes pre-suit depositions, could not waive immunity because only statutes can do so. *See City of Dallas v. Dallas Black Fire Fighters Ass'n*, 353 S.W.3d 547, 553–55 (Tex. App.—Dallas 2011, no pet.). The Galveston Court of Appeals has issued a similar holding. *See Tex. Credit Co. v. O'Farrell*, 177 S.W.2d 331, 333 (Tex. App.—Galveston 1944, no writ.) (citing Rules 815 and 816 to decline reading Rule 40 in a manner that abrogated jurisdiction).

In sum, using the sovereign immunity framework to interpret a Rule violates the Rules themselves (and, more importantly, a statute). The Court can affirm on this straightforward ground.

### C. The Court should not extend sovereign immunity to Rule 176.6(e) and 192.6(a) proceedings in a parallel court.

Even if the Court ignored the Texas Supreme Court's decree that the Rules presumptively apply to the State, and Section 22.004(a), Rule 815, and Rule 816's disavowal of the immunity framework, the common law does not support extending

17

sovereign immunity to parallel Rule 176.6(e) proceedings. Such an extension would not further the modern justifications for the doctrine, and there is no historic practice of doing so. Before the Nonparty Patients dive into this discussion, some background on sovereign immunity is needed.

> 1. *The sovereign immunity analysis involves a two-step analysis, which the State ignores in its brief.*

"Sovereign immunity is a common-law doctrine that initially developed without any legislative or constitutional enactment." *Reata*, 197 S.W.3d at 374. Although it originally emerged from the mistaken premise that "the King can do no wrong," the justifications for the doctrine's endurance have evolved. *Phillips v. McNeill*, 635 S.W.3d 620, 627 (Tex. 2021). Now, both the judiciary and the Legislature play a role in shaping the doctrine's contours and applicability, and two modern reasons justify its continued vitality: (a) to shield the public fisc from litigation "distractions" and (b) to preserve the separation of powers. *See Hidalgo Cnty.*, 669 S.W.3d at 183; *Reata*, 197 S.W.3d at 382 (Brister, J., concurring).

Only the judiciary can determine "whether the doctrine should be modified or abrogated under particular circumstances." *Hidalgo Cnty.*, 669 S.W.3d at 183. Accordingly, a complete sovereign immunity analysis unfolds in two steps. *Id.* at 182–83. First, the Court asks whether sovereign immunity even applies to the proceeding at issue. *Id.* This inquiry requires that sovereign immunity would further two interests—undue threats to the public fisc and preserving the separation of

18

powers. *Id.* at 183. And, although it is not formally a part of the analysis, the Texas Supreme Court has also looked at the history of a certain proceeding to guide its analysis. *Id.* at 184.

If the common law would not extend sovereign immunity to the proceeding, then the inquiry ends. That's because immunity cannot be waived if it does not exist. *Id.* To give an obvious example, suppose that one private litigant sues another private litigant. The common law would not extend immunity to that proceeding because there is no undue threat to the public fisc (other than a strain on judicial resources) and the separation of powers would not be disturbed. Nor is there any history of shielding purely private entities from suit or liability. Thus, the question of waiver is irrelevant.[5] *See Harris Cnty. Fresh Water Supply Dist. No. 61 v. Magellan Pipeline Co., L.P.*, 649 S.W.3d 630, 641 (Tex. App.—Houston [1st Dist.] 2022) ("When sovereign immunity is inapplicable due to . . . judicial modification rather than legislative pronouncement, courts characterize the protection's absence as arising from abrogation rather than waiver.").

---

[5] To provide less-obvious examples, the Texas Supreme Court has held sovereign immunity does not apply in the following scenarios: (1) where a political subdivision files a condemnation proceeding against another political subdivision, *Hidalgo Cnty.*, 669 S.W.3d at 188; (2) where a private party initiates an *ultra vires* suit against a state official and seeks prospective injunctive relief, *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009); and (3) where a municipal bond issuer sues under the Expedited Declaratory Judgment Act, *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 458–59 (Tex. 2009).

Because this threshold inquiry does not arise often, the Texas Supreme Court has called it "the rare antecedent question." *Id.* at 183. And even though this interlocutory appeal directly touches on the antecedent question, the State's brief does not assess it at all. *See* Br. at 6–11 (assuming sovereign immunity applies and discussing legislative waiver). As the Nonparty Patients explain below, addressing the antecedent question head-on will show that sovereign immunity should not extend to the Dallas County proceeding.

But suppose the common law did apply sovereign immunity to the Dallas County proceeding. If that is the case, the Court must move to the second step of the analysis and determine whether the Legislature waived immunity. *City of Dallas v. Albert*, 354 S.W.3d 368, 373 (Tex. 2011) ("[Sovereign immunity's] boundaries are established by the judiciary, but we have consistently held that waivers of it are the prerogative of the Legislature."); *see also* Tex. Gov't Code § 311.034. Waiver can be found through either "magic words," or if four considerations—which the Nonparty Patients call the "*Taylor* factors," show that the Legislature clearly and unambiguously waived sovereign immunity. *See Taylor*, 106 S.W.3d at 697–98.

Here, the four *Taylor* factors show that the Legislature clearly and unambiguously waived sovereign immunity. *See infra* Section I.D.

20

## 2. The Nonparty Patients' Dallas County litigation does not present an undue threat to the public fisc.

The Nonparty Patient's Dallas County proceedings do not unduly threaten the public fisc. Stated differently, this goal would not be served if sovereign immunity extended to the Dallas County proceeding.

As a preliminary matter, it is true that in all State-related litigation, the State must use some public resources. However, it is *not* true that any time the State must spend resources on a case, it is entitled to sovereign immunity. For common law purposes, the relevant question is whether a proceeding presents *undue* threat to public funds, such that it improperly "distract[s]" the State and diverts funds away from their "intended purposes." *See Reata*, 197 S.W.3d at 375, 382; *id.* at 382 (Brister, J., concurring). Here, the Nonparty Patients' Dallas County challenge presents no undue distraction. In fact, the State likely knew it was coming.

The Texas Supreme Court's decision in *Hidalgo County* offers worthy insights. There, the Court explained that when a political subdivision files a condemnation proceeding against another political subdivision, the lawsuit does "not threaten the public treasury *except* to the extent the condemnee entity chooses to participate." 669 S.W.3d at 186 (emphasis added).

Importantly, the Texas Supreme Court did *not* say that the condemnee's participation had any bearing on the common law's public-fisc consideration. Instead, the Court suggested that the litigation costs prompted by the condemnee fell

21

outside the interests protected by the common law. *See id.* Although the Court did not explicitly explain why, it is reasonable to conclude that the following principle guided its decision: It was the government's choice to file suit, and in so doing, the government must have decided that any litigation costs stemming from the condemnee's resistance was worth the effort. To be sure, these litigation costs affect the public fisc; however, they do not constitute an *undue* diversion of public funds. After all, the State decided the funds were *intended* for this use—to pursue condemnation and fight any resistance thereto. *See id.*; *cf. Reata*, 197 S.W.3d at 375 ("[I]f the governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs.").

That commonsense principle should control here. Everything that has transpired was a problem of the State's own making. It was the State's decision to sue Dr. Lau and seek the records of 21 patients. It was also the State's decision to serve subpoenas in Dallas County. The State should have foreseen that patients were likely to contest any overly broad subpoenas. It should have also foreseen that service in Dallas County exposed it to a parallel proceeding therein. In these circumstances, the Court should presume that any strain on the public fisc came about because the State decided the benefits outweighed the costs.

In fact, the Court need not presume this—the State has affirmatively said so. In its opening brief, it says it is willing to litigate the scope of the subpoenas in Collin County. Br. at 10. The State cannot plausibly claim that a proceeding in Dallas County improperly diverts funds from the public treasury and simultaneously say it would happily use those funds to litigate the same issue in another county. The first common law justification for sovereign immunity would not be served. The Court should not extend sovereign immunity to the Dallas County proceeding.

3. *Applying Rule 176.6(e) to the State would preserve the separation of powers.*

In addition, applying Rule 176.6(e)'s entire venue provision to the State would *preserve* the separation of powers, not disturb it. That's because the Rules of Civil Procedure and Evidence are a byproduct of the judiciary and Legislature's reasoned judgment. Pursuant to the state Constitution and statute, the Texas Supreme Court begins the rulemaking process by promulgating a Rule of Civil Procedure or Evidence. *See* Tex. Const. art. V, § 31(b); Tex. Gov't Code §§ 22.004(a), 74.024(c)(6).[6] After the high Court adopts its final Rule, the legislature can draw

---

[6] *See also* Justice Nathan L. Hecht, Justice Jane N. Bland, et al., *How Texas Court Rules Are Made*, Texas Supreme Court, at 3 n.21, https://www.txcourts.gov/media/1374851/How-Court-Rules-Are-Made.pdf (last updated May 20, 2024) (explaining rulemaking process); William V. Dorsaneo III, *The History of Texas Civil Procedure*, 63 Baylor L. Rev. 713, 792–93 (2014) (same).

23

from its override power and nullify the Rule at any time. *See* Tex. Gov't Code §§ 22.004(b), 74.024(d).

Here, Rule 176.6(e) has been on the books since 1998. *See* Tex. R. Civ. P. 176.6(e) cmt. 1. When the Texas Supreme Court promulgated it, it was certainly aware of its prior decisions in *Texas Co.*, *Herring*, and *Lowe*, which all announced that the Rules apply to the State unless a special provision says otherwise. *See Tex. Co.*, 281 S.W.2d at 90; *Herring*, 513 S.W.2d at 7–8; *Lowe*, 540 S.W.2d at 301. If the Texas Supreme Court wanted to include a carveout provision for the State, it could have done so to maintain consistency with its own precedent. But it did not. The Rule's silence on the matter speaks volumes.

The Legislature's inaction is also telling. The Court must presume that when the Texas Supreme Court presented the Legislature with Rule 176.6(e), the Legislature understood the legal landscape at the time. *See Lewis v. State*, 693 S.W.3d 453, 465 (Tex. App.—Houston [14th Dist.] 2023, pet. denied) ("We presume that the Legislature is aware of relevant case law when it enacts, *or declines to amend*, statutes." (emphasis added)). Yet, in the 27 years of Rule 176.6(e)'s existence, not once has the Legislature chosen to override or demand that Rule 176.6(e) contain an express exception for the State. The Legislature's decision not to intervene is a resounding endorsement of the Rule as written. The Court must respect that decision.

24

Against this backdrop, a holding in the State's favor would *undermine* the separation of powers. That's because a decree that sovereign immunity prohibits a Rule's application to the State—when that Rule does not announce an exception—would elevate the executive branch above that of its two co-equal branches. That, the Court cannot do.

4.       *There is no common law tradition of extending sovereign immunity to parallel discovery disputes involving a subpoena.*

The Nonparty Patients have located no instance in which the common law has applied sovereign immunity to a discovery dispute, let alone a parallel proceeding involving a subpoena. To be sure, the Court only needs to assess the twin purposes of sovereign immunity and determine whether their purposes would be served if immunity reached a particular proceeding. Even so, the Texas Supreme Court has also looked at the common law tradition to guide its analysis, perhaps because the past has predictive value for the future. *See Hidalgo Cnty.*, 669 S.W. at 184–85 (assessing the history of condemnation suits).

The Nonparty Patients have surveyed more than 130 sovereign immunity opinions from the Texas Supreme Court—including every case cited by the State. *See* App'x A. The Nonparty Patients have not located one example—let alone a common law tradition—of extending sovereign immunity to a discovery dispute. *See id.* As the Nonparty Patients' Appendix shows, every substantive discussion of

25

immunity arose in the context of asserting an affirmative cause of action—not invoking an evidentiary privilege. *Id.*

5. *The State's focus on* Reata *and* Nazari *is misplaced—those cases concerned counterclaims for which a money judgment would be entered, not an evidentiary privilege.*

Glaringly absent from the State's brief is any substantive discussion on the antecedent question. Rather than analyzing sovereign immunity under the framework above, the State focuses on the Texas Supreme Court's specific holdings in *Reata* and *Nazari*. Br. at 8–10. But those holdings have little import here. In *Reata* and *Nazari*, the Texas Supreme Court explained how the common law views sovereign immunity where a *counterclaim for monetary relief* is concerned. *Reata*, 197 S.W.3d at 377; *Nazari*, 561 S.W.3d at 509. As the Nonparty Patients have explained, counterclaims are causes of actions that seek a final judgment on the merits. *See supra* Section I.A. Privilege assertions are not causes of actions. *Id.* In fact, *Nazari*—the case the State relies on the most—recognizes this distinction:

> We agree with the [S]tate that these decisions do not establish that the state *waives* its sovereign immunity by initiating suit. Many of the cases the [counterclaimant] cite stand simply for the proposition that procedural rules apply to the [S]tate just as they would any other litigant when the state appears in court. ***That proposition, though sound***, does not answer the question whether sovereign immunity protects the [S]tate from having to defend certain actions [counterclaims] to begin with.

*Nazari*, 561 S.W.3d at 501 (emphasis added).

26

While the State's general summary of *Reata* and *Nazari* is correct—the State enjoys sovereign immunity from counterclaims when it only seeks civil penalties, but it does not when it seeks money damages—its attempted application of those cases misses the mark. The principal holdings in those cases have little relevance precisely because the Nonparty Patients have never asserted a counterclaim against the State. They have only asserted a privilege.

In sum, sovereign immunity should not extend to a Rule 176.6(e) proceeding initiated in the county of service. The twin purposes of sovereign immunity would not be served; the common law lacks any example supporting the State's position; and the State's reliance on *Reata* and *Nazari* erroneously conflates a cause of action with asserting an evidentiary privilege.

### D. Even if sovereign immunity did exist for this particular proceeding, the Legislature has waived it.

Even still, if sovereign immunity extended to the Dallas County proceeding as a matter of common law, the Legislature clearly and unambiguously waived it. To be sure, Rule 176.6(e) does not contain any "magic words" specifically waiving immunity. *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 101.025(a) ("Sovereign immunity is waived and abolished to the extent of liability created by this chapter."). That said, an examination of the Texas Supreme Court's four "*Taylor* factors" shows that the Legislature waived sovereign immunity. Those factors are: (1) whether the statute would be meaningless unless immunity were waived; (2) whether any

27

ambiguities exist, and if so, the court should resolve them in favor of retaining immunity; (3) whether the State must be joined; and (4) whether the Legislature enacted simultaneous measures to insulate public resources from the reach of the judgment creditors, such as a statutory provision that limits "the State's potential liability." 106 S.W.3d at 697–98.[7] All four considerations point to waiver.

### 1. Rule 176.6(e) would be meaningless unless immunity were waived.

If sovereign immunity barred the State from being subject to a Rule 176.6(e) proceeding in the county of service, the venue provision would be illusory whenever the State is the party issuing the subpoena. The State's position effectively nullifies half of the Rule's venue options. *See City of Dallas v. TCI W. End, Inc.*, 463 S.W.3d 53, 55–56 (Tex. 2016) ("We must avoid adopting an interpretation that renders any part of the statute meaningless."); *Henderson v. Shanks*, 449 S.W.3d 834, 842 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("If possible, we must ascertain . . . intent from the rule's language and not look to extraneous matters for an intent that the rule does not state."); *cf. Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("We have stated time and time again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). Here, the Court

---

[7] That the Texas Supreme Court phrased the *Taylor* factors in terms of analyzing *a statute*, rather than a Rule, is noteworthy. The Court's word choice reinforces the Nonparty Patients' arguments that sovereign immunity is an awkward framework with which to analyze the Rules of Civil Procedure. *See supra* Section III.B.

should not vitiate the Texas Supreme Court and Legislature's deliberate choice to provide nonparties two fora for asserting their privileges. The procedural right enshrined in Rule 176.6(e) would be gutted if the State could invoke sovereign immunity to avoid a challenge in another forum. The first *Taylor* factor heavily supports waiver.

2. *Rule 176.6(e) contains no ambiguities, so the Court cannot resolve a nonexistent ambiguity in the State's favor.*

The same is true for the second *Taylor* factor. Rule 176.6(e)'s text is clear as day. It applies to "any party" or "any person affected by the discovery request." Here, the State is the party, and the Nonparty Patients are persons affected by the discovery request. The Rule's plain language, coupled with the absence of any limiting language, demonstrates a clear intent that the Rule's venue provision applies to all litigants, including the State. *Tex. Co.*, 281 S.W.2d at 90 (holding the State "is bound by the same rules of procedure that bind all other litigants, except where special provision is made to the contrary"). There are no ambiguities, so there is nothing to be resolved in favor of retaining immunity. The second *Taylor* factor supports waiver.

3. *Rule 176.6(e) presumes State participation.*

While the Rule does not require the State to be joined in every proceeding, it does contemplate that the State, as the party issuing a subpoena, may be subject to a challenge in a court outside the original forum. This is not a situation where a State

is involuntarily haled into court on an unrelated matter. Rather, the State availed itself of judicial power in Dallas County when it chose to serve two subpoenas therein. *Cf. Reata*, 197 S.W.3d at 375 (noting the State "presumably . . . made a decision to expend resources to pay litigation costs" when it "interjects itself into or chooses to engage in litigation"). The third factor supports waiver.

### 4. The Rule contains built-in protections that limit the State's exposure.

The Rule inherently limits the State's financial exposure. The fourth *Taylor* factor looks for simultaneous measures that insulate public resources from the reach of judgment creditors, such as statutory caps or limitations on liability. *Taylor*, 106 S.W.3d at 698.

At worst, this factor weighs neutrally because it is only relevant where a party seeks money damages from the State. The Nonparty Patients have explained that asserting an evidentiary privilege is not equivalent to asserting a cause of action for monetary relief. *See supra* Section I.A.

At best, this factor supports waiver, since the only relief available under Rule 176.6(e) is a quashing or modification of a subpoena. Moreover, the State does not deny that the same relief could be sought in the trial court. Its admission underscores how the public treasury remains at risk for the substantially same financial burden in opposing that relief. In light of this limited relief, Rule 176.6(e) merely regulates the scope of discovery and does not threaten the public treasury.

30

*    *    *

Based on the foregoing, a panoply of reasons show that the State's sovereign immunity argument holds no water. Supreme Court precedent, a statute, two Rules, the twin purposes of sovereign immunity, and the four *Taylor* factors do not support the State's position. The Court should affirm.

## II.    THE NONPARTY PATIENTS NEVER RAISED A CHALLENGE ON BEHALF OF THE UNREPRESENTED PATIENTS

Finally, the State confusingly argues that the Nonparty Patients cannot challenge the subpoenas for the unrepresented patients. Br. at 5, 13–14. It is unclear why the State has made this argument. In the proceedings below, counsel for the represented patients never raised a challenge for the unrepresented patients. Rather, counsel said the opposite:

> [I]n the course of our conferences, [the State] has admitted it may not have good address information.
>
> That's important because of the rules for subpoenas require that the nonparties['] medical records . . . were served with a copy of the subpoena . . . . ***And some court somewhere, we would hope***, would eventually look into whether the people who aren't here are not here because they don't care or are not here because they don't know that they're one of the 37 anonymized Texans at issue in this case.
>
> ***But again, I understand that I represent, as counsel likes to remind me, only the 11***. So I will focus on them next.

RR.49 (emphasis added).

These statements fully acknowledge that the Nonparty Patients' counsel only raised the issue of service in his capacity as an officer with a duty of candor to the

31

Court, not as someone who has the capacity to challenge the subpoena's impact on the unrepresented patients. *See also* CR.226–27 (counsel's letter to the trial court, which expressed concerns about the unrepresented patients "in our personal capacity as members of the bar" and "officers of the Court"). Moreover, the State has not presented this below, and thus, the parties have not developed a full record on whether the production of unrepresented patients' records will implicate the represented patients. For example, provider emails and visitor logs may commingle the Nonparty Patients' information with the unrepresented patients'. Determining which parts of the subpoenas to adjudicate in the first instance is solely within the discretion of the Dallas County court. Because the State did not raise this issue before the Dallas County court, it is not properly before this Court. The State's standing argument seeks an impermissible advisory opinion. *See Gen. Land Off. State of Tex. v. OXY U.S.A., Inc.* 789 S.W.2d 569, 570 (Tex. 1990) ("[T]he judicial power does not embrace the giving of advisory opinions."). The issue is not properly before the Court.

## PRAYER

For the foregoing reasons, the Court should affirm the trial court's denial of the State's plea to the jurisdiction.

Dated: May 5, 2025

Respectfully submitted,

*/s/ Thanh D. Nguyen*

Jervonne D. Newsome (Lead Counsel)
Texas Bar No. 24094869
jnewsome@winston.com
Thanh D. Nguyen
Texas Bar No. 24126931
tdnguyen@winston.com
Jonathan Hung
Texas Bar No. 24143033
johung@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl St., 9th Floor
Dallas, TX 75201
Telephone: (214) 453-6500

William M. Logan
Texas Bar No. 24106214
wlogan@winston.com
Evan D. Lewis
Texas Bar No. 24116670
edlewis@winston.com
Olivia A. Wogon
Texas Bar No. 24137299
owogon@winston.com
**WINSTON & STRAWN LLP**
800 Capitol Street, Suite 2400
Houston, TX 77002
Telephone: (713) 651-2600

Hollie M. Albin (*pro hac vice* forthcoming*)*
D.C. Bar No. 90029285
hmalbin@winston.com
**WINSTON & STRAWN LLP**
1901 L Street N.W.
Washington, D.C. 20036
Telephone: (202) 282-5000

33

David Phillips (*pro hac vice* forthcoming)
N.Y. Bar No. 6175863
dphillips@winston.com
**WINSTON & STRAWN LLP**
200 Park Avenue, 43rd Floor
New York, NY 10166
Telephone: (212) 294-6700

**ATTORNEYS FOR APPELLEES**

## CERTIFICATION OF COMPLIANCE

This brief complies with the type-volume limitation of Tex. R. App. P. 9.4(i)(2). The body of this brief contains 7,944 words, excluding those portions exempted by the Rule.

This brief also complies with the typeface requirements of Tex. R. App. P. 9.4(e). It has been prepared in Times New Roman, a proportionally spaced typeface, in 14-point font.

*/s/ Thanh D. Nguyen*
Thanh D. Nguyen

**CERTIFICATE OF SERVICE**

Consistent with Tex. R. App. P. 9.5(b)(1), the undersigned counsel certifies that on May 5, 2025, this brief was electronically served on all counsel of record through the Court's electronic filing system.

*/s/ Thanh D. Nguyen*
Thanh D. Nguyen

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Sarah Shelby on behalf of Thanh Nguyen
Bar No. 24126931
SShelby@winston.com
Envelope ID: 100466131
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief for Appellees
Status as of 5/6/2025 7:05 AM CST

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David G. Shatto | | david.shatto@oag.texas.gov | 5/5/2025 7:23:25 PM | SENT |
| Rob Farquharson | | rob.farquharson@oag.texas.gov | 5/5/2025 7:23:25 PM | SENT |
| Abby Smith | | abby.smith@oag.texas.gov | 5/5/2025 7:23:25 PM | SENT |
| Johnathan Stone | | johnathan.stone@oag.texas.gov | 5/5/2025 7:23:25 PM | SENT |
| Ian Bergstrom | | Ian.Bergstrom@oag.texas.gov | 5/5/2025 7:23:25 PM | SENT |
| Amy Pletscher | | amy.pletscher@oag.texas.gov | 5/5/2025 7:23:25 PM | SENT |

Associated Case Party: Nonparty Patient No. 1

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| William Logan | 24106214 | wlogan@winston.com | 5/5/2025 7:23:25 PM | SENT |
| Evan Lewis | 24116670 | edlewis@winston.com | 5/5/2025 7:23:25 PM | SENT |
| Jervonne Newsome | 24094869 | jnewsome@winston.com | 5/5/2025 7:23:25 PM | SENT |
| Thanh Nguyen | | tdnguyen@winston.com | 5/5/2025 7:23:25 PM | SENT |
| Olivia Wogon | | owogon@winston.com | 5/5/2025 7:23:25 PM | SENT |
| Jonathan Hung | | JOHung@winston.com | 5/5/2025 7:23:25 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David Walsh | 791874 | dwalsh@katxlaw.com | 5/5/2025 7:23:25 PM | SENT |
| Pauline Sisson | | pauline.sisson@oag.texas.gov | 5/5/2025 7:23:25 PM | SENT |
| David Phillips | | DPhillips@winston.com | 5/5/2025 7:23:25 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Sarah Shelby on behalf of Thanh Nguyen
Bar No. 24126931
SShelby@winston.com
Envelope ID: 100466131
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Brief for Appellees
Status as of 5/6/2025 7:05 AM CST

Case Contacts

| David Phillips | | DPhillips@winston.com | 5/5/2025 7:23:25 PM | SENT |
|---|---|---|---|---|
| Jamie Vargo | | JVargo@winston.com | 5/5/2025 7:23:25 PM | SENT |
| Emily Samuels | | emily.samuels@oag.texas.gov | 5/5/2025 7:23:25 PM | SENT |
| Melinda Pate | | melinda.pate@oag.texas.gov | 5/5/2025 7:23:25 PM | SENT |
| Houston Docket | | ecf_houston@winston.com | 5/5/2025 7:23:25 PM | SENT |

# Appendix A

| # | Caption | Citation | Summary |
|---|---------|----------|---------|
| 1 | *Bd. of Land Comm'rs v. Walling* | Dallam 524 (Tex. 1843) | Discussing immunity in the context of whether the assignee of a claim to a league and labor of land was entitled to a certificate for such league and labor of land. |
| 2 | *Hosner v. DeYoung* | 1 Tex. 764, 769 (Tex. 1847) | Discussing immunity in the context of a claim that a landowner was entitled to have his land surveyed. |
| 3 | *City of Waco v. Branch* | 5 S.W.2d 498, 499 (Tex. 1928) | Discussing whether a city was exempt from liability where a plaintiff asserted a negligence claim against park employees. |
| 4 | *State v. Epperson* | 42 S.W.2d 228, 231 (Tex. 1931) | Discussing immunity where a plaintiff sued a tax collector for money allegedly due under a contract. |
| 5 | *Anderson, Clayton & Co. v. State ex rel. Allred* | 62 S.W.2d 107, 107, 110 (Tex. 1933) | Explaining the State waived its sovereign immunity when it sought penalties and an injunction against trucking companies that allegedly operated without necessary permits. |
| 6 | *Steele v. City of Houston* | 603 S.W.2d 786, 791 (Tex. 1980) | Concluding sovereign immunity did not shield a city where a plaintiff brought a destruction claim under Article I, Section 17 of the Texas Constitution (commonly known as the "Takings Clause," but authorizes claims based on governmental taking, damaging, and destruction of property) |
| 7 | *Tex. Educ. Agency v. Leeper* | 893 S.W.2d 432, 437–40 (Tex. 1994) | Discussing immunity in the context of a statutory claim to attorneys' fees resulting from the successful claim to injunctive relief halting prosecution under a compulsory attendance law. |
| 8 | *Wichita Falls State Hosp. v. Taylor* | 106 S.W.3d 692, 693–94 (Tex. 2003) | Holding the legislature did not waive sovereign immunity for wrongful death claims for damages brought under Tex. Health & Safety Code § 321.003. |
| 9 | *Dallas Area Rapid Transit v. Whitley* | 104 S.W.3d 540, 541 (Tex. 2003) | Discussing immunity in the context of a negligence claim. |
| 10 | *Tex. Dep't of Parks & Wildlife v. Miranda* | 133 S.W.3d 217, 220–21 (Tex. 2004) | Discussing whether sovereign immunity protected a state agency where a plaintiff brought negligence and gross negligence claims. |
| 11 | *Tooke v. City of Mexia* | 197 S.W.3d 325, 330 (Tex. 2006) | Discussing sovereign immunity in breach-of-contract dispute. |

| | | | |
|---|---|---|---|
| 12 | *Reata Constr. Corp. v. City of Dallas* | 197 S.W.3d 371, 373–74 (Tex. 2006) | Holding a city waived its immunity where a defendant filed a third-party claim of negligence against the city, and the city, in turn, asserted a negligence claim against the defendant. |
| 13 | *PKG Contracting, Inc. v. City of Mesquite* | 197 S.W.3d 388, 388–89 (Tex. 2006) | Discussing immunity in the context of *quantum meruit* and negligence claims. |
| 14 | *City of Angleton v. USFilter Operating Services, Inc.* | 201 S.W.3d 677, 678 (Tex. 2006) | Remanding so the lower court could consider *Reata*'s impact on a counterclaim. |
| 15 | *Port Neches-Groves ISD v. Pyramid Constructors* | 201 S.W.3d 679, 681 (Tex. 2006) | Remanding so the lower court could consider *Reata*'s impact on a counterclaim sounding in contract. |
| 16 | *City of Midland v. Goerlitz* | 201 S.W.3d 689, 690 (Tex. 2006) | Remanding so the lower court could consider *Reata*'s impact on a claims sounding in contract. |
| 17 | *Metropolitan Transit Auth. v. M.E.B. Eng'g, Inc.* | 201 S.W.3d 692, 692–93 (Tex. 2006) | Remanding so the lower court could consider *Reata*'s impact on a claims sounding in contract. |
| 18 | *City of Irving v. Inform Constr., Inc.* | 201 S.W.3d 693, 693–94 (Tex. 2006) | Discussing immunity in the context of a contract dispute. |
| 19 | *City of Dallas v. Thompson* | 210 S.W.3d 601, 602–03 (Tex. 2006) | Discussing immunity in the context of personal injury claims. |
| 20 | *Ben Bolt-Palito Blanco Consol. ISD v. Tex. Pol. Subdivisions Fund* | 212 S.W.3d 320, 322 (Tex. 2006) | Discussing immunity in the context of an insurance/breach-of-contract claim lodged against a self-insurance fund comprised of political subdivisions. |
| 21 | *City of Houston v. Williams* | 216 S.W.3d 827, 828–29 (Tex. 2007) | Discussing immunity in a wage dispute. |

| | | | |
|---|---|---|---|
| 22 | *City of Galveston v. State* | 217 S.W.3d 466, 468–69 (Tex. 2007) | Discussing immunity where the State sued a city for money damages resulting from alleged negligence. |
| 23 | *In re Tex. Dep't of Transp.* | 218 S.W.3d 74, 76 (Tex. 2007) | Briefly mentioning sovereign immunity in the context of negligence, gross negligence, premises defect, and special defect claims. |
| 24 | *State ex rel. Tex. Dept. of Transp. v. Precision Solar Controls, Inc.* | 220 S.W.3d 494, 494 (Tex. 2007) | Discussing immunity where defendant counterclaimed for damages for business disparagement. |
| 25 | *State v. Holland* | 221 S.W.3d 639, 643–44 (Tex. 2007) | Holding that the State retains sovereign immunity against an alleged takings claim because the claim sounded in contract. |
| 26 | *State v. Fidelity and Deposit Co. of Maryland* | 223 S.W.3d 309, 312 (Tex. 2007) | Holding State waived immunity against defensive counterclaim by initiating litigation on a performance bond. |
| 27 | *Abilene Housing Authority v. Gene Duke Builders, Inc.* | 226 S.W.3d 415, 417 (Tex. 2007) | Holding municipal housing authority with power to "sue and be sued" may retain immunity against breach of contract claim; remanded for further consideration. |
| 28 | *Stephen F. Austin State University v. Flynn* | 228 S.W.3d 653, 657 (Tex. 2007) | Discussing immunity in context of Texas Tort Claims Act ("TTCA") in personal injury suit. |
| 29 | *Dallas Fire Fighters Ass'n v. City of Dallas* | 231 S.W.3d 388 (Tex. 2007) | Discussing immunity in context of breach of contract claim. |
| 30 | *Texas A & M University System v. Koseoglu* | 233 S.W.3d 835, 846 (Tex. 2007) | Holding sovereign immunity applied against claim for breach of a settlement agreement. |
| 31 | *Texas Parks and Wildlife Dept. v. E.E. Lowrey Realty, Ltd.* | 235 S.W.3d 692, 694 (Tex. 2007) | Discussing immunity in context of TTCA in property damage suit. |

| 32 | *Lamesa Independent School District v. Booe* | 235 S.W.3d 710, 711 (Tex. 2007) | Discussing sovereign immunity in breach-of-contract and *quantum meruit* claim against school district. |
|---|---|---|---|
| 33 | *Fort Worth Independent School Dist. v. Service Employment Redevelopment* | 243 S.W.3d 609, 610 (Tex. 2007) | Discussing sovereign immunity in breach-of-contract claim against school district. |
| 34 | *Nueces County v. San Patricio County* | 246 S.W.3d 651, 653 (Tex. 2008) | Holding county immune from liability for collection of ad valorem taxes on land later determined to belong to another county, absent express legislative waiver. |
| 35 | *Houston Mun. Emp. Pension Sys. v. Ferrell* | 248 S.W.3d 151, 155–56 (Tex. 2007) | Discussing immunity where plaintiff sought a declaratory judgment and injunctive relief. |
| 36 | *City of Corsicana v. Stewart* | 249 S.W.3d 412, 413–14 (Tex. 2008) | Discussing sovereign immunity in the context of a premises liability claim. |
| 37 | *Igal v. Brightstar Info. Tech. Grp., Inc.* | 250 S.W.3d 78, 84 & n.6 (Tex. 2008) | Briefly mentioning sovereign immunity in a wage dispute. |
| 38 | *Univ. of Tex.–Pan Am. v. Aguilar* | 251 S.W.3d 511, 512 (Tex. 2008) | Briefly mentioning sovereign immunity in a premises liability case. |
| 39 | *Mission Consol. Indep. Sch. Dist. v. Garcia* | 253 S.W.3d 653, 654 (Tex. 2008) | Discussing immunity where plaintiff asserted claims under the Texas Commission on Human Rights Act and the TTCA. |
| 40 | *FKM P'ship, Ltd. v. Bd. of Regents of the Univ. of Houston Sys.* | 255 S.W.3d 619, 635 (Tex. 2008) | Discussing immunity in the context of a condemnation proceeding. |

| | | | |
|---|---|---|---|
| 41 | *City of Dallas v. Reed* | 258 S.W.3d 620, 621 (Tex. 2008) | Discussing immunity where plaintiff brought a premises defect claim. |
| 42 | *City of Waco v. Lopez* | 259 S.W.3d 147, 147–48 (Tex. 2008) | Discussing immunity where plaintiff brought wrongful termination claims. |
| 43 | *Dallas Area Rapid Transit v. Amalgamated Transit Union Local No. 1338* | 273 S.W.3d 659, 660–61 (Tex. 2008) | Discussing immunity in a breach of contract dispute. |
| 44 | *Sw. Bell Tel., L.P. v. Harris Cnty. Toll Road Auth.* | 282 S.W.3d 59, 60, 68 (Tex. 2009) | Discussing immunity where plaintiff sued governmental entity for reimbursement under the Tex. Transp. Code § 251.102 and asserted an inverse condemnation claim. |
| 45 | *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.* | 283 S.W.3d 838, 841 (Tex. 2009) | Discussing immunity where hospital sued governmental entity over unpaid monies under Indigent Health Care and Treatment Act and the Texas Constitution. |
| 46 | *City of El Paso v. Heinrich* | 284 S.W.3d 366, 373 (Tex. 2009) | Holding an ultra vires claim must be brought against a state official and the state itself is immune from suit, even though, "for all practical purposes," the suit is against the state. |
| 47 | *Tex. Dep't of Transp. v. York* | 284 S.W.3d 844, 845 (Tex. 2009) | Discussing immunity where plaintiffs sued for premises liability. |
| 48 | *Tex. Dep't of Transp. v. Gutierrez* | 284 S.W.3d 848, 849 (Tex. 2009) | Discussing immunity where plaintiffs sued for premises liability. |

| 49 | *Dallas Cnty. v. Posey* | 290 S.W.3d 869 (Tex. 2009) | Discussing immunity where plaintiffs asserted wrongful death claims. |
|---|---|---|---|
| 50 | *State v. Lueck* | 290 S.W.3d 876, 878 (Tex. 2009) | Assessing sovereign immunity under the Texas Whistleblower Act where a former government employee lodged a wrongful termination claim against the government. |
| 51 | *Zachry Constr. Corp. v. Tex. A & M Univ.* | 298 S.W.3d 617, 617–18 (Tex. 2009) | Briefly discussing immunity where governmental entity may have been a responsible third-party in a personal-injury and wrongful-death case. |
| 52 | *Tex. Dept. of Ins. v. Reconveyance Servs., Inc.* | 306 S.W.3d 256, 257–59 (Tex. 2010) | Explaining that the Texas Department of Insurance retains sovereign immunity from suit under the UDJA unless suit is brought against officials in their official capacity for *ultra vires* actions. |
| 53 | *Tex. State Univ. - San Marcos v. Bonnin* | 314 S.W.3d 912, 912 (Tex. 2010) | Discussing immunity where plaintiffs sued for premises liability. |
| 54 | *TDCJ v. McBride* | 317 S.W.3d 731 (Tex. 2010) | Discussing sovereign immunity where inmate asserted due process claim. |
| 55 | *Kirby Lake Development, Ltd. v. Clear Lake City Water Authority* | 320 S.W.3d 829, 832 (Tex. 2010) | Holding that governmental immunity is waived for breach of contract claims under Local Government Code § 271.152. |
| 56 | *Univ. of Tex. at El Paso v. Herrera* | 322 S.W.3d 192, 193, 202 (Tex. 2010) | Discussing immunity where plaintiff sued governmental entity for workplace-related injuries. |
| 57 | *Colquitt v. Brazoria Cnty.* | 324 S.W.3d 539 (Tex. 2010) | Discussing immunity where plaintiff sued governmental entity for negligence and premises liability. |
| 58 | *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Est. of Arancibia* | 324 S.W.3d 544 (Tex. 2010) | Discussing immunity where plaintiffs sued a governmental entity for the wrongful death of their daughter. |

| | | | |
|---|---|---|---|
| 59 | *Tex. Lottery Comm'n v. First State Bank of DeQueen* | 325 S.W.3d 628, 631 (Tex. 2010) | Explaining that the Declaratory Judgments Act waives sovereign immunity for statutory challenges, thereby allowing suit against the Texas Lottery Commission to permit an assignment of a lottery prize to proceed. |
| 60 | *The Univ. of Tex. at Austin v. Hayes* | 327 S.W.3d 113, 115 (Tex. 2010) | Discussing immunity where plaintiffs sued for premises liability. |
| 61 | *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London* | 327 S.W.3d 118, 122 (Tex. 2010) | Briefly discussing immunity in the context of a suit for breach of contractor between a building owner and a government contractor. |
| 62 | *Franka v. Velasquez* | 332 S.W.3d 367, 370 (Tex. 2011) | Discussing immunity in the context of a health care liability claim. |
| 63 | *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Bailey* | 332 S.W.3d 395, 397 (Tex. 2011) | Discussing immunity in the context of a health care liability claim. |
| 64 | *In re Smith* | 333 S.W.3d 582, 587 (Tex. 2011) | Discussing immunity in the context of the Texas Wrongful Imprisonment Act claim. |
| 65 | *Travis Central Appraisal Dist. v. Norman* | 342 S.W.3d 54, 54–55 (Tex. 2011) | Discussing immunity in the context of a retaliatory discharge claim. |
| 66 | *LTTS Charter Sch., Inc. v. C2 Constr., Inc.* | 342 S.W.3d 73, 75 (Tex. 2011) | Discussing immunity in the context of a breach-of-contract claim. |

| | | | |
|---|---|---|---|
| 67 | *City of Dallas v. VSC, LLC* | 347 S.W.3d 231, 236 (Tex. 2011) | Explaining Texas's state constitution waived sovereign immunity where a plaintiff brought a claim under the Takings Clause of the Texas Constitution. |
| 68 | *Tex. Health & Hum. Servs. Comm'n v. El Paso Cnty. Hosp. Dist.* | 351 S.W.3d 460 (Tex. App.— Austin 2011), aff'd in part, rev'd in part, 400 S.W.3d 72 (Tex. 2013) | Discussing immunity where Hospitals sought declaratory judgment and injunctive relief against state agency. |
| 69 | *Lesley v. Veterans Land Bd. of the State of Tex.* | 352 S.W.3d 479, 483–84 (Tex. 2011) | Discussing immunity in context of property dispute over mineral rights against the Veterans Land Board, a state agency. |
| 70 | *City of Houston v. Williams* | 353 S.W.3d 128, 134 (Tex. 2011) | Discussing immunity in breach of contract suit by firefighters against City employer. |
| 71 | *Rolling Plains Groundwater Conservation Dist. v. City of Aspermont* | 353 S.W.3d 756, 759 (Tex. 2011) | Discussing immunity where groundwater conservation district sought past due fees, penalties, and costs against city. |
| 72 | *City of Dallas v. Albert* | 354 S.W.3d 368, 371 (Tex. 2011) | Discussing immunity in wage dispute alleging breach of contract and seeking declaratory relief. |
| 73 | *Texas Parks and Wildlife Dept. v. Sawyer Trust* | 354 S.W.3d 384, 387–88 (Tex. 2011) | Discussing immunity in context of declaratory judgment sought against city. |
| 74 | *Sharyland Water Supply Corp. v. City of Alton* | 354 S.W.3d 407, 412 (Tex. 2011) | Discussing immunity in context of breach of contract claim and negligence claim against city. |

| 75 | *Texas Dep't of Transp. v. Sefzik* | 355 S.W.3d 618, 620–21 (Tex. 2011) | Discussing sovereign immunity where plaintiff sought declaratory judgment against State agency. |
|---|---|---|---|
| 76 | *In re Nestle USA, Inc.* | 359 S.W.3d 207, 212 (Tex. 2012) | Explaining that a waiver of sovereign immunity for retrospective monetary relief must be clear and unambiguous in suit seeking tax refunds. |
| 77 | *City of Dallas v. Martin* | 361 S.W.3d 560, 560 (Tex. 2011) | Discussing immunity where firefighters sued governmental entity over unpaid wages. |
| 78 | *City of Dallas v. Stewart* | 361 S.W.3d 562, 565, 568 (Tex. 2012) | Discussing immunity where plaintiff asserted due process and unconstitutional taking claim against governmental agency. |
| 79 | *Oncor Elec. Delivery Co. v. Dallas Area Rapid Transit* | 369 S.W.3d 845, 848–49 (Tex. 2012) | Discussing immunity where a utilities provider sued a government entity to condemn an easement. |
| 80 | *Mission Consol. Indep. Sch. Dist. v. Garcia* | 372 S.W.3d 629, 636 (Tex. 2012) | Holding that the Texas Commission on Human Rights Act (TCHRA) waives immunity for school districts only when the plaintiff pleads facts that state a claim under the statute, and that failure to establish a prima facie case deprives the court of jurisdiction due to sovereign immunity. |
| 81 | *Hearts Bluff Game Ranch, Inc. v. State* | 381 S.W.3d 468, 476 (Tex. 2012) | Discussing immunity where a plaintiff asserted an inverse condemnation claim against the State. |
| 82 | *Prairie View A & M Univ. v. Chatha* | 381 S.W.3d 500, 510–11 (Tex. 2012) | Discussing immunity where a plaintiff sued government entity over pay discrimination. |
| 83 | *Manbeck v. Austin Indep. Sch. Dist.* | 381 S.W.3d 528, 529 (Tex. 2012) | Holding that governmental immunity bars an award of attorney fees against a school district in a workers' compensation case. |

| 84 | *Tex. Dep't of Transp. v. Perches* | 388 S.W.3d 652 (Tex. 2012) | Discussing immunity where plaintiffs sued governmental entity in premises defect and wrongful-death case. |
|---|---|---|---|
| 85 | *CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.* | 390 S.W.3d 299, 301 (Tex. 2013) | Briefly discussing immunity where a plaintiff nonsuited a wrongful death suit after a governmental entity raised a sovereign immunity argument in a plea to the jurisdiction. |
| 86 | *Riemer v. State* | 392 S.W.3d 635, 638 n.1 (Tex. 2013) | Briefly discussing immunity where plaintiff asserted takings claim and claim for trespass to try title against the State. |
| 87 | *Rusk State Hospital v. Black* | 392 S.W.3d 88, 91 (Tex. 2012) | Discussing immunity in the context of a health care liability claim. |
| 88 | *University of Texas Southwestern Medical Center at Dallas v. Gentilello* | 398 S.W.3d 680, 682 (Tex. 2013) | Discussing immunity in the context of an anti-retaliation claim. |
| 89 | *City of Bellaire v. Johnson* | 400 S.W.3d 922 (Tex. 2013) | Discussing immunity in the context of a personal injury claim. |
| 90 | *University of Houston v. Barth* | 403 S.W.3d 851, 853 (Tex. 2013) | Discussing immunity in the context of an anti-retaliation claim. |
| 91 | *Texas Adjutant General's Office v. Ngakoue* | 408 S.W.3d 350, 352 (Tex. 2013) | Discussing immunity in the context of a personal injury claim. |
| 92 | *In re Michael N. Blair* | 408 S.W.3d 843, 844–45 (Tex. 2013) | Discussing immunity in the context of the Texas Wrongful Imprisonment Act claim. |

| 93 | *Dallas Metrocare Services v. Adolfo Juarez* | 420 S.W.3d 39 (Tex. 2013) | Discussing immunity in the context of a personal injury claim. |
|---|---|---|---|
| 94 | *City of Watauga v. Gordon* | 434 S.W.3d 586, 587 (Tex. 2014) | Discussing immunity in the context of an intentional tort claim. |
| 95 | *Texas Department of Human Services v. Okoli* | 440 S.W.3d 611, 612 (Tex. 2014) | Discussing immunity in the context of an anti-retaliation claim. |
| 96 | *Lubbock County Water Control and Improvement District v. Church & Akin, L.L.C.* | 442 S.W.3d 297, 299 (Tex. 2014) | Discussing immunity in the context of a breach of contract claim. |
| 97 | *Porretto v. Texas General Land Office* | 448 S.W.3d 393, 394 (Tex. 2014) | Discussing immunity in the context of a takings claim. |
| 98 | *Zachry Construction Corp. v. Port of Houston Authority of Harris County* | 449 S.W.3d 98, 103–04 (Tex. 2014) | Discussing immunity in the context of a breach of contract claim. |
| 99 | *Texas Commission on Environmental Quality v. Resendez* | 450 S.W.3d 520, 521 (Tex. 2014) | Discussing immunity in the context of an anti-retaliation claim. |
| 100 | *Texas Department of Aging and Disability Services v. Cannon* | 453 S.W.3d 411, 413 (Tex. 2015) | Discussing immunity in the context of related tort and § 1983 claims. |

| | | | |
|---|---|---|---|
| **101** | *Ryder Integrated Logistics, Inc. v. Fayette County* | 453 S.W.3d 922, 926 (Tex. 2015) | Discussing immunity in the context of a personal injury claim. |
| **102** | *Klumb v. Houston Municipal Employees Pension System* | 458 S.W.3d 1 (Tex. 2015) | Discussing immunity in the context of constitutional and breach of contract claims. |
| **103** | *University of Texas at Arlington v. Williams* | 459 S.W.3d 48 (Tex. 2015) | Discussing immunity in the context of a premises liability claim. |
| **104** | *Southwestern Bell Telephone, L.P. v. Emmett* | 459 S.W.3d 578, 582 (Tex. 2015) | Discussing immunity in the context of a declaratory judgment action and a related claim for an injunction. |
| **105** | *William Marsh Rice University v. Refaey* | 459 S.W.3d 590, 591 (Tex. 2015) | Discussing immunity in the context of various tort claims. |
| **106** | *Brown & Gay Eng'g, Inc. v. Olivares* | 461 S.W.3d 117, 119, 123 (Tex. 2016) | Assessing whether sovereign immunity could protect a private contractor where plaintiffs brought negligence claims against it. |
| **107** | *San Antonio Water System v. Nicholas* | 461 S.W.3d 131, 134 (Tex. 2015) | Discussing immunity in the context of an anti-retaliation claim. |
| **108** | *Suarez v. City of Texas City* | 465 S.W.3d 623, 626 (Tex. 2015) | Discussing immunity in the context of a premises liability claim. |
| **109** | *Beeman v. Livingston* | 468 S.W.3d 534, 535 (Tex. 2015) | Discussing immunity in the context of claims alleging statutory violations of the Texas Human Resources Code arising from the Texas Department of Criminal Justice's failure to provide accommodations for deafness. |

| | | | |
|---|---|---|---|
| 110 | *Patel v. Texas Department of Licensing and Regulation* | 469 S.W.3d 69, 74 (Tex. 2015) | Discussing immunity in the context of a declaratory judgment action seeking to enjoin enforcement of various statutes and regulations regulating cosmetology. |
| 111 | *Lawson v. City of Diboll* | 472 S.W.3d 667 (Tex. 2015) | Discussing immunity in the context of a premises liability claim. |
| 112 | *Cascos v. Tarrant County Democratic Party* | 473 S.W.3d 780, 782 (Tex. 2015) | Discussing immunity in the context of an action to recover attorneys' fees for a successful defense of a prior action to remove a political candidate from a ballot. |
| 113 | *Texas Department of Public Safety v. Bonilla* | 481 S.W.3d 640, 642 (Tex. 2015) | Discussing immunity in the context of a personal injury claim. |
| 114 | *Houston Belt & Terminal Railway Co. v. City of Houston* | 487 S.W.3d 154, 158–60 (Tex. 2016) | Discussing immunity in the context of an *ultra vires* action, where parties alleged government actor improperly assess monetary charges. |
| 115 | *University of Texas Health Science Center at Houston v. Rios* | 542 S.W.3d 530, 532–34 (Tex. 2017) | Discussing immunity where government employer did not promote first-year resident to second-year residency, and the former resident asserted breach of contract and various tort claims. |
| 116 | *Nazari v. State* | 561 S.W.3d 495 (Tex. 2018) | Holding that sovereign immunity barred dental service providers from asserting counterclaims against the state and affirmed the dismissal of their third-party claims against Xerox. |
| 117 | *Hillman v. Nueces County* | 579 S.W.3d 354, 356–57 (Tex. 2019) | Discussing sovereign immunity where former government attorney sued county for wrongful termination, seeking relief for lost wages and benefits, mental anguish, pain and suffering, loss of earning capacity, and exemplary damages. |
| 118 | *PHI, Inc. v. Tex. Juvenile Just. Dep't* | 593 S.W.3d 296, 300–02 (Tex. 2019) | Assessing whether sovereign immunity shielded a state agency where a plaintiff sued the agency for negligently causing property damage under the TTCA. |

| | | | |
|---|---|---|---|
| 119 | *City of Madisonville v. Sims* | 620 S.W.3d 375, 377 (Tex. 2020) | Holding that the Whistleblower Act's ninety-day filing deadline is a jurisdictional prerequisite to suit, and failure to comply results in dismissal for lack of jurisdiction due to governmental immunity. |
| 120 | *Phillips v. McNeill* | 635 S.W.3d 620, 627–28 (Tex. 2021) | Holding ultra vires exception to sovereign immunity applies where state officials fail to provide a statutorily required hearing, allowing suit to proceed for specific relief. |
| 121 | *City of Fort Worth v. Pridgen* | 653 S.W.3d 176, 178 (Tex. 2022) | Discussing immunity where plaintiffs sued governmental entity for wrongful termination under the Texas Whistleblower Act. |
| 122 | *Hidalgo Cnty. Water Improvement Dist. No. 3 v. Hidalgo Cnty. Irrigation Dist. No. 1* | 669 S.W.3d 178, 188 (Tex. 2023) | Holding governmental immunity does not apply to condemnation proceedings between political subdivisions. |
| 123 | *Campbellton Road, Ltd. v. City of San Antonio* | 688 S.W.3d 105, 108–09 (Tex. 2024) | Discussing immunity where plaintiff sued governmental entity for breach of contract. |
| 124 | *San Jacinto River Auth. v. City of Conroe* | 688 S.W.3d 124, 128 (Tex. 2024) | Discussing immunity where two government entities litigated a contract dispute. |
| 125 | *Tex. Dep't of Transp. v. Self* | 690 S.W.3d 12 (Tex. 2024) | Discussing immunity where plaintiffs sued the State for negligence and inverse condemnation. |
| 126 | *In re Rogers* | 690 S.W.3d 296, 299–300 (Tex. 2024) | Holding that governmental immunity is waived by statute for mandamus relief to compel performance of a duty in connection with an election, allowing suit against a political subdivision's board. |
| 127 | *City of Houston v. Sauls* | 690 S.W.3d 60 (Tex. 2024) | Discussing immunity where plaintiffs sued a governmental entity, alleging wrongful death claims. |

| 128 | *State v. Zurawski* | 690 S.W.3d 644, 653–54 (Tex. 2024) | Discussing immunity where plaintiffs challenged the constitutionality of Texas's anti-abortion laws. |
|---|---|---|---|
| 129 | *Tex. Tech Univ. Sys. v. Martinez* | 691 S.W.3d 415 (Tex. 2024) | Discussing immunity where plaintiff sued two government entities for age-based discrimination. |
| 130 | *Hensley v. State Comm'n on Jud. Conduct* | 692 S.W.3d 184, 190, 200 (Tex. 2024) | Assessing whether sovereign immunity applied to a state commission where a justice of the peace asserted claims under the Texas Religious Freedom Restoration Act and the Free Speech Clause of the Texas Constitution. |
| 131 | *City of Buffalo v. Moliere* | 703 S.W.3d 350, 353 (Tex. 2024) | Explaining a city did not enjoy governmental immunity where a plaintiff properly asserts an ultra vires claim against it. |
| 132 | *City of Austin v. Powell* | 704 S.W.3d 437, 449 (Tex. 2024) | Assessing whether sovereign immunity protected a city where a plaintiff asserted a recklessness claim under the Texas Tort Claims Act (TTCA). |
| 133 | *Dallas Cnty. Hosp. Sys. v. Kowalski* | 704 S.W.3d 550, 552–53 (Tex. 2024) | Briefly noting a public hospital might not enjoy sovereign immunity where a worker asserted three claims (disability discrimination, a "regarded as" disability discrimination, and retaliation) against it. |
| 134 | *Commons of Lake Houston, Ltd. v. City of Houston* | — S.W.3d —, 2025 WL 876710, at *1, *3 n.9 (Tex. 2025) | Noting sovereign immunity did not shield a municipality where a real estate developer asserted a takings claim against it. |
| 135 | *Kensington Title-Nevada, LLC v. Tex. Dep't of State Health Servs.* | — S.W.3d —, 2025 WL 937478, at *1–2, *4–5 (Tex. 2025) | Holding sovereign immunity waived where a real estate company asserted a claim under Tex. Govt' Code § 2001.038(a) against a state agency and sought a declaratory judgment that would declare a licensing rule invalid. |